In re Theodore H. ALLAVENA, d/b/a Tow-A-Way Towing & Wrecking Service, Debtor.

MILEASING COMPANY, Plaintiff,

v.

Theodore H. ALLAVENA, Defendant.

Bankruptcy No. 81–02165G.

Adv. No. 81–1150G.

United States Bankruptcy Court, E.D. Pennsylvania.

June 27, 1983.

William M. Shields, Monteverde, Hemphill, Maschmeyer & Obert, Philadelphia, Pa., for plaintiff, Mileasing Co.

Leonard P. Goldberger, Fox, Rothschild, O'Brien & Frankel, Philadelphia, Pa., for debtor/defendant, Theodore H. Allavena d/b/a Tow-A-Way Towing & Wrecking Service.

Jonathan H. Ganz, Philadelphia, Pa., Trustee.

## OPINION

EMIL F. GOLDHABER, Bankruptcy Judge:

The issue presented herein is whether a debt owed by a debtor to a creditor is nondischargeable pursuant to section 523(a)(6) of the Bankruptcy Code ("Code") because it arose from a "willful and malicious" injury by the debtor to the creditor's property. We conclude that the debt in the case before us is nondischargeable because the debtor sold the creditor's property without authorization and retained a substantial portion of the proceeds of said sale for his own benefit.

The facts of the instant case are as follows:[1] On June 4, 1981, Theodore H. Allavena, d/b/a Tow-A-Way Towing and Wrecking Service ("the debtor"), filed a petition for relief under chapter 7 of the Code. Prior thereto, on February 17, 1978, the debtor and Mileasing Company ("Mileasing") entered into an agreement where-

---

1. This opinion constitutes the findings of fact and conclusions of law required by Rule 752 of the Rules of Bankruptcy Procedure.

in Mileasing leased a 1978 wrecker truck to the debtor for use in his towing and wrecking business. The aforesaid lease expressly stated that the debtor-lessee had no option to purchase the truck,[2] that assignment of the lease was prohibited without the prior written consent of the lessor[3] and that the debtor-lessee acquired no title to the truck under the agreement.[4] Nevertheless, in July of 1980, the debtor entered into an oral agreement with one Edward Malloy, t/a E & M Towing ("Malloy") for the sale of the truck in question to Malloy for $8,000.00. As of that date, Malloy had possession of the truck (N.T. 5/18/82 at 40). Malloy paid the debtor $5,000.00 in July of 1980 and in November of the same year, he gave the debtor an additional $1,200.00 (N.T. 5/18/82 at 40). The debtor testified that he deposited the $5,000.00 in his business checking account but that said sum was exhausted about three months after the deposit was made. Malloy has never returned the truck to the debtor or Mileasing. As a result, Mileasing contends that the debtor owes it $8,698.00 and that said debt is nondischargeable pursuant to section 523(a)(6) of the Code which provides that:

> (a) a discharge under Section 727, 1141 or 1328(b) of this title does not discharge an individual debtor from any debt—
>
> \* \* \* \* \* \*
>
> (6) for willful and malicious injury by the debtor to another entity or to the property of another entity.

11 U.S.C. § 523(a)(6).

"[T]he conversion of another's property without his knowledge or consent, done intentionally and without justification and excuse, to the other's injury, is a willful and malicious injury within the meaning of the exception [§ 523(a)(6)]." 3 Collier on Bankruptcy ¶ 523.16[1] at 523–120 (15th ed.).

It is undisputed that Malloy had physical possession of the truck in July of 1980.

Yet, the debtor contends that Mileasing, in effect, "authorized" this July transfer on the basis of several after-the-fact telephone conversations made in November of 1980 (and several times thereafter) wherein Mileasing quoted "buy-out" prices to the debtor whereby he could purchase the truck free and clear of Mileasing's interest. Quite frankly, we are at a loss to see how these buy-out conversations could in any way be construed as consent on Mileasing's part to a sale that had occurred some four months earlier, especially when the proceeds of said sale were retained by the debtor.[5]

The debtor further maintains that at all times it was his intention to exercise his "option" to purchase the truck from Mileasing by paying off the balance due Mileasing "with the proceeds received from Malloy," thereby obtaining title to the truck and then delivering title to Malloy. In this case, it appears that the debtor's actions speak louder than his words. Suffice it to say that the debtor delivered the truck to Malloy before he had any option to purchase and before he obtained title to the truck. In fact, the debtor never received title to the truck. Moreover, of the $6,200.00 received by the debtor from Malloy, it is without question that at least $5,000.00 of said sum never reached Mileasing.

In addition, we think that the debtor's course of conduct led Mileasing to believe that the debtor had possession of the truck all along. Even though the debtor did not, in fact, have the truck in his possession, he continued to make some payments to Mileasing under the lease agreement and he purchased insurance for the vehicle in his own name.

A similar situation was faced by the court in *In re Smith,* 11 B.R. 20 (Bkrtcy.N.D.Ohio, W.D.1981):

> Even though the Defendant initially had possession of the collateral, the legal title remained in the secured party, Ohio

---

2. *See* Exh. P–3, Disclosure Statement at ¶ 12.

3. *See* Exh. P–3 at ¶ 12.

4. *See* Exh. P–3 at ¶ 1.

5. The debtor does allege, however, that he used the $1,200.00 November payment from Malloy to make four payments that were past due to Mileasing in February of 1981. We think this is irrelevant, since the willful and malicious act had already been performed by the debtor.

Citizens. It is evident from the record that the Defendant intentionally sold the backhoe. The fact that he omitted to tell Ohio Citizens about the sale, while knowing that they held a security interest in it reveals he acted wrongfully. Mr. Smith indicated no just excuse for his actions. He stated at trial that he intended to pay Ohio Citizens back eventually, but that the amount he received for the backhoe was not enough to liquidate the debt. Instead he decided to pay off other creditors. In effect, the collateral was effectively placed beyond the reach of the Plaintiff. Ohio Citizens was accordingly injured when they were precluded from maintaining their rights in the collateral or its proceeds.

*Id.* at 23.

In the case *sub judice,* not only did the debtor wrongfully sell the truck to Malloy, but he inexcusably retained, for his own benefit, the great majority of the proceeds realized from the unauthorized sale. We find the debtor's conduct in this case to be willful and malicious, wholly without excuse or justification and, therefore, we determine that his debt of $8,698.00 to Mileasing is nondischargeable.