In re Alexander
WOLFINGTON, Debtor.

COMMONWEALTH LAND TITLE
INSURANCE CO., Plaintiff,

v.

Alexander WOLFINGTON, Defendant.

Bankruptcy No. 82–03464K.
Adv. No. 82–3091K.

United States Bankruptcy Court,
E.D. Pennsylvania.

March 5, 1985.

---

James M. Matour, Philadelphia, to plaintiff.

Edward J. DiDonato, Philadelphia, to Trustee.

Alexander Wolfington, pro se.

John Judge, Philadelphia, Trustee.

## OPINION

WILLIAM A. KING, Jr., Bankruptcy Judge.

A complaint to except a debt from discharge in bankruptcy is before the Court for decision. It is alleged that the debtor's knowing delivery of forged documents to the plaintiff in order to induce it to insure a loan caused willful and malicious injury to the plaintiff; therefore, the debt may be excepted from discharge under 11 U.S.C. § 523(a)(6).

The debtor admits that he knew the documents contained forged signatures at the time they were delivered to the plaintiff. However, he subsequently delivered a judgment note to the plaintiff in the amount of the loss, which plaintiff did not reject. Therefore, he argues, his liability to the plaintiff stems from the judgment note and may be discharged.

For the reasons stated herein, we conclude that the debt is non-dischargeable.

The facts of the case are as follows:[1]

---

**1.** This Opinion constitutes the findings of fact and conclusions of law required by Rule 7052 of the Rules of Bankruptcy Procedure.

Alexander Wolfington is the debtor in this case under Chapter 7 of the Bankruptcy Code ("Code"). During the period from June 1981 to December 1981, the debtor owned certain real property located in Philadelphia, Pennsylvania at 308 South Front Street (hereinafter "property").

In the summer of 1981, the debtor requested Apex Financial Corporation ("Apex") to lend him the sum of $100,000.00. As a condition to making the aforesaid loan, Apex required that the loan be secured by a mortgage on the property and that the Apex Mortgage be second in lien priority only to a first mortgage in favor of Penn Federal Savings and Loan Association. In addition to a first mortgage in favor of Penn Federal Savings and Loan Association, the property, as of July 16, 1981, was also encumbered by a mortgage in favor of Industrial Valley Bank and Trust Company and a mortgage in favor of Continental Bank.

The plaintiff in this proceeding is Commonwealth Land Title Insurance Company, a title company with offices at Eight Penn Center Plaza, Philadelphia, Pennsylvania. In order to induce the title company to insure the Apex Mortgage as a second mortgage, superior in lien priority to the IVB Mortgage and Continental Mortgage, the debtor on July 16, 1981 delivered to the title company two (2) subordination agreements purportedly signed by IVB and Continental and purporting to subordinate the IVB Mortgage and Continental Mortgage to the Apex Mortgage. The signatures in the subordination agreements were not signed by officers of IVB or Continental but, in fact, were forged by an individual or individuals employed in the office of Wolfington Corporation. At the time of the delivery of the subordination agreements, the debtor knew that the subordination agreements were forged.

On December 10, 1981, the debtor sold the property. At settlement, the title company paid Apex the sum of $47,315.04 as a title loss under Policy # C 641–680–M, be-cause Apex had a last place lien position to that which the title company had insured and the liens on the property were in excess of the proceeds from the sale. The debtor and his wife then executed and delivered a judgment note to the title company in the amount of $47,315.04 with a letter ("letter agreement") which stated:

"We the undersigned, acknowledge that you have today paid $47,315.04 as a title loss under Policy # C 641–680–M. This loss, in the form of a payment toward the amount necessary to satisfy your insured, Apex Financial Corporation of Pa., Inc., in connection with the sale of the captioned property, arises from the Apex mortgage having an inferior lien position to that which you insured.

We acknowledge our liability to you in this regard and offer to make restitution of the amount of your loss. In order to assist you to affect a recovery, we are today executing and delivering to you a note in the above amount, upon which judgment may be entered. It is understood that your payment, as set forth above, does not constitute a voluntary loan to us and that our delivery of the said note does not relieve us from liability for the said loss, or any other loss or claim of loss arising from the aforementioned matter. We further understand that this offer of restitution does not limit or preclude any remedy or right which you might have against us otherwise."

The debtor filed for relief under Chapter 7 of the Code on July 22, 1982. The debtor did not compensate the title company for its loss resulting from the forged subordination agreements prior to the filing.

The title company has filed a complaint seeking a determination from the Court that the debt owed to the title company is non-dischargeable pursuant to section 523(a)(6) of the Code.

On September 11, 1983, the debtor appeared for trial on the complaint *pro se.*[2]

---

**2.** *See Commonwealth Land Title Ins. Co. v. Alexander E. Wolfington, (In re Wolfington),* No. 83–5132, slip op. (E.D.Pa. July 31, 1984) wherein the District Court granted John F.X. Fenerty,

**228**

We reserved decision on the issues pending our review of proposed findings of fact and conclusions of law. The plaintiff, through counsel, and the debtor, acting *pro se*, have submitted proposed findings of fact, conclusions of law and memoranda of law in support of their positions.

Section 523(a)(6) of the Code provides: A discharge under section 772 ... of this title does not discharge an individual debtor from any debt—

\* \* \* \* \* \*

for willful and malicious injury by the debtor to another entity or to the property of another entity.

11 U.S.C. § 523(a)(6).

■ A "willful and malicious injury" within the meaning of 11 U.S.C. § 523(a)(6) means a wrongful act, intentionally done without just cause or excuse. *In re Callaway*, 41 B.R. 341 (Bankr.E.D.Pa.1984); *In re Gabrielson*, 1 B.R. 563 (Bankr.E.D.N.Y. 1979). An actual intent to harm or injure is not required. An intent to do the wrongful act is sufficient. *In re McGiboney*, 8 B.R. 987 (Bankr.N.D.Ala.1981).

Examples of conduct which have been found sufficient to render a debt non-dischargeable under section 523(a)(6) include a debtor's misappropriation of funds and a debtor's conversion of an insurance proceeds check. *In re Simmons*, 9 B.R. 62 (Bankr.S.D.Fla.1981); *In re Lavitsky*, 11 B.R. 570 (Bankr.W.D.Pa.1981).

■ A "willful and malicious injury" includes injury to intangible personal property rights. *In re Cheek*, 17 B.R. 875, 878 (Bankr.M.D.Ga.1982); *In re Morris*, 12 B.R. 509, 511 (Bankr.D.Nev.1981); *In re Maiolo*, 12 B.R. 114 (Bankr.N.D.Ga.1981).

■ The meaning of the term "malicious" is best left to the particular circumstances of a case, keeping in mind that the main purpose of the Bankruptcy Code is to let an honest debtor begin his financial life anew. *In re Langer*, 12 B.R. 957 (D.N.D.

Esquire, leave to withdraw his appearance as counsel for the debtor in this adversary pro-

1981). An injury may be "malicious" if it was wrongful and without just cause. *Morris*, 12 B.R. at 511. A wrongful act which necessarily produces harm and is without just cause or excuse may constitute a willful and malicious injury. *Cheek*, 17 B.R. at 878.

In the case at bench, the debtor's act which caused the willful and malicious injury to the plaintiff was the *knowing delivery of forged documents* which purported to subordinate the mortgages of IVB and Continental to the mortgage of Apex. Relying on the forged subordination agreements, the title company insured the mortgage of Apex. As a direct result of the plaintiff's reliance on the forged agreements, the plaintiff subsequently had to pay Apex $47,315.04 because the proceeds from the sale of the property were insufficient to cover Apex's inferior lien.

■ The fact that the debt to the plaintiff arose from a loan transaction between the debtor and Apex does not alter our holding. It is well settled that where one secondarily liable is called upon to make good on an obligation and he pays the debt, he steps into the shoes of the former creditor. *In re Covino*, 12 B.R. 876 (Bankr.M.D.Fla.1981) *citing Allen `v. See*, 196 F.2d 608, 610 (10th Cir.1952). Moreover, in this case, the debtor directly represented to the plaintiff that Apex would have a second mortgage position on the property by delivering the forged subordination agreements directly to the plaintiff.

The debtor argues in this memorandum of law that "Commonwealth, with full knowledge of the incorrectly signed Subordination Agreements, insured the relative lien priority of the Apex Mortgage ... Commonwealth agreed to fund the difference between the income from the sale and the cost of paying the existing liens. Commonwealth had no obligation to advance these funds."

ceeding.

This is not a correct version of the facts, however. According to our understanding of the facts presented at trial, the title company insured the lien position of Apex in July 1981, pursuant to which Apex extended a loan of $100,000.00 to the debtor. This took place *before* the title company found out about the forged signatures on the subordination agreements. Whether the title company had knowledge of the forgeries at the time of settlement is irrelevant. By the time settlement took place, in December 1981, the title company was already obligated to pay out on its insurance policy with Apex. It did not, as the debtor asserts in his memorandum of law, elect of its own accord to lend the debtor $47,315.04 on a conventional loan basis by advancing that amount to Apex.

Finally, we must address the debtor's argument that his obligation to the plaintiff stems from the letter agreement and judgment note and that, consequently, the debt is dischargeable.

In the case of *Greenberg v. Schools,* 21 B.R. 1011 (S.D.Fla.1982) *aff'd* 711 F.2d 152 (11th Cir.1983), the District Court was faced with a similar argument on appeal. The parties in *Greenberg* had entered into an agreement in full settlement of a civil action involving a bankrupt's alleged fraud, misappropriation and misuse of corporate funds while acting in a fiduciary capacity. The debtor defaulted on the settlement agreement and subsequently filed a petition in bankruptcy. The debtor urged the District Court on appeal to accept the Bankruptcy Court's finding that once the parties entered into a good faith settlement agreement, that agreement effectively extinguished the underlying action for fraud and limited any future relief solely to the enforcement of the settlement agreement only. Accordingly, the debtor argued, section 523(a)(4) of the Code should not apply because the debt arose out of a failure to fully perform the terms of the settlement agreement and did not result directly from any fraud or defalcation.

The Court rejected the debtor's argument stating:

The interpretation urged by the appellee would allow a debtor to discharge a debt incurred by his own fraud by simply entering into a settlement agreement prior to declaring bankruptcy. The debtor could even accept a substantially adverse settlement with the knowledge that its terms and conditions would be nullified by the subsequent petition in bankruptcy. Neither the statute, nor its legislative history, nor cases construing the reach of the statute, support this position.

21 B.R. at 1013.

The Court cited *Hartford Accident & Indemnity Co. v. Flanagan,* 28 F.Supp. 415 (S.D.Ohio 1939) wherein it was held that a debt created by a bankrupt's embezzlement and misappropriation while acting in a fiduciary capacity could not be discharged even though the nature of the claim was subsequently changed by an indemnity contract. In *Flanagan,* the Court observed:

It is the purpose of the Bankruptcy Act, among other things, to release an honest, unfortunate, and insolvent debtor from the burden of oppressive debts and to restore him to business activity. This is done in the interests of society and it has been held that the act should be liberally construed to that end. But, too, the act should be liberally construed so as to prevent the discharge in bankruptcy of a liability which would not exist but for the fraudulent conduct of the bankrupt. "Public Policy forbids the discharge of the bankrupt from a debt incurred through fraud while acting as an officer or in a fiduciary capacity, and a debt so created, whether reduced to a judgment or not, is not to be discharged in bankruptcy." (citations omitted)

28 F.Supp. at 419.

Similarly, in *In re Covino,* 12 B.R. 876 (Bankr.M.D.Fla.1981), the debtor signed a written confession and executed a demand note payable to a corporation after he misappropriated corporate funds by forging signatures on corporate checks made payable to himself. Under a policy insuring

the corporation against loss resulting from conversion by one of its employees, the corporation's insurer compensated it for the loss resulting from the misappropriation. When the debtor sought to discharge the obligation from the demand note in bankruptcy, the Court held that it was non-dischargeable because it was created by the fraud of the debtor.

■ Applying the principles articulated in these cases to the case at bench, we find that the debt owed to the plaintiff may not be discharged simply because the debtor subsequently executed a judgment note and had it delivered to the plaintiff. The plaintiff's loss under its insurance policy with Apex directly emanated from the forgeries in the subordination agreements, which the debtor knowingly had delivered to the plaintiff in order to induce it to insure the lien position of Apex. The underlying debt sought to be discharged is unquestionably the result of the debtor's act of intentionally deceiving the plaintiff, not his breach of the letter agreement and failure to compensate the plaintiff according to the terms of the judgment note. The Court is satisfied that the debtor's conduct caused willful and malicious injury to the plaintiff and that the debt should be excepted from discharge.