In re Ellen SALAMONE, Debtor.

HOMEMAKERS, INC., Plaintiff,

v.

Ellen SALAMONE and Leo F. Doyle, Trustee, Defendants.

Bankruptcy No. 85–01922G.

Adv. No. 85–0836G.

United States Bankruptcy Court, E.D. Pennsylvania.

July 25, 1986.

Jay C. Glickman, Lansdale, Pa., for plaintiff, Homemakers, Inc.

Jeffrey V. Matteo, Norristown, Pa., for debtor/defendant, Ellen Salamone.

Leo F. Doyle, Philadelphia, Pa., defendant/trustee.

OPINION

EMIL F. GOLDHABER, Chief Judge:

The predominant question for decision is whether we should grant a retail sales company an exception to discharge against the debtor on the basis that the debtor, as a commissioned saleswoman, diverted sales from the company to her own business. For the reasons outlined below, we conclude that the plaintiff should be granted an exception to discharge in the amount of $55,741.14 under 11 U.S.C. § 523(a)(6).

The facts of this case are as follows:[1] The plaintiff, Homemakers, Inc. ("Homemakers"), is a company which sells custom draperies, slipcovers and related goods to the public through the use of commissioned sellers. Homemakers hired the debtor in May of 1981 as such a seller for the company. A condition of her employment was that the debtor was not to have a conflict of interest with Homemakers as to the goods sold by that company. With this understanding, each week the company forwarded the debtor approximately 25 sales leads which were typically generated through newspaper advertisements. The debtor would contact these leads and offer to sell them goods furnished by Homemakers. On each sale she earned a commission of 10% of the sale price.

In September of 1984, Homemakers received a call from a customer aggrieved by the improper hanging of draperies allegedly installed by it. Homemakers' records revealed no customer under the proffered name. The customer informed Homemakers that she had ordered the draperies through the debtor. An investigation by the company revealed that the debtor obtained the customer's name from one of the company's leads and sold the draperies on her own behalf rather than on behalf of the company. Homemakers also uncovered the fact that the debtor had opened accounts with various fabric houses as early as the beginning of 1983 and she ultimately purchased goods from these dealers in the amount of $23,821.00. Although the debtor's sales record with Homeowners' closely paralleled that of a fellow employee, Joan McGuinness ("McGuinness"), after the debtor began selling her own wares, her sales on behalf of Homemakers slacked considerably in relation to McGuinness's.[2] Had the debtor been a faithful employee, orders for these goods would have been processed by Homeowners. Homeowners would have sold and installed these raw materials, after transformation into the finished product, at a price four times higher than the cost of the material.[3] Thus, the debtor deprived Homeowners of gross sales in the amount of $95,284.00. Homemakers' gross profit on sales is typically 65% of its gross receipts, meaning that the debtor deprived it of $61,934.60 in gross profits. From this sum Homemaker would have paid the debtor a 10% commission equaling $6,193.46 for adjusted gross profits of $55,741.14.

After these revelations about the debtor's alleged conflict of interest, Homemakers dismissed the debtor from employment and sought damages and injunctive relief against her in state court. Prior to the entry of judgment in that action, the debtor filed a petition for relief under chapter 7 of the Bankruptcy Code ("the Code"). In the schedules accompanying her petition the debtor listed the value of her home as $130,000.00. Although expert testimony

1. This opinion constitutes the findings of fact and conclusions of law required by Bankruptcy Rule 7052.

2. Comparable sales in dollars between the debtor and McGuinness plotted over time, have been set forth in the following table:

|            | 1/81–6/81 | 7/81 12/81 | 1/82 6/82 | 7/82 12/82 | 1/83 6/83 | 7/83–12/83 | 1/84–6/84 | 7/84–12/84 |
|------------|-----------|------------|-----------|------------|-----------|------------|-----------|------------|
| Salamone   | 7,200     | 99,475     | 70,020    | 99,189     | 91,947    | 78,976     | 23,821    | 5,000      |
| McGuinness | 80,000    | 103,461    | 68,888    | 63,630     | 93,436    | 113,629    | 86,952    | 120,000    |
| Difference | –72,800   | –3,986     | + 1,132   | +35,559    | – 1,489   | –34,653    | –63,131   | –115,000   |

3. In uncontradicted testimony Homeowners stated that it prices its merchandise at a figure eight to eleven times higher than the cost of the goods it purchased for the project. While testimony on behalf of Homemakers is otherwise completely within our ken of commercial reality, a price factor of eight to eleven is simply beyond the sphere of credibility. We accordingly gauge the multiplier at a factor of four.

revealed that the home is worth significantly more, we cannot attribute to the debtor the requisite fraudulent intent as to the value of her house.

Homeowners filed the instant complaint against the debtor requesting a denial of discharge under 11 U.S.C. § 727(a)(4) based on the debtor's alleged knowing and fraudulent undervaluation of the house. Homeowners alternatively requested an exception to discharge under § 523(a).

■ An individual debtor may be denied a discharge of debts for any of the reasons set forth under 11 U.S.C. § 727(a) which states as follows in pertinent part:

§ 727. Discharge

(a) The court shall grant the debtor a discharge, unless—

(4) the debtor knowingly and fraudulently, in or in connection with the case—

(A) made a false oath or account;

(B) * * *

* * * * * *

11 U.S.C. § 727(a) (in part). The burden of proof under this section is on the plaintiff. Bankruptcy Rule 4005. Under this provision, a debtor who knowingly and fraudulently omits or undervalues assets of the estate in the schedules accompanying his bankruptcy petition, is subject to a denial of discharge. *Farmers Co-op Assoc. v. Strunk,* 671 F.2d 391 (10th Cir.1982) (construing an analogous provision under the Bankruptcy Act of 1898). As applied to the instant case we could not find that the debtor knowingly and fraudulently undervalued the house. Consequently, Homemakers has failed to establish a basis for a denial of discharge under § 727(a)(4).

However, an *exception* to discharge may be predicated on several bases in a chapter 7 case, among which are the following:

§ 523. Exceptions to discharge

(a) A discharge under section 727, 1141, or 1328(b) of this title does not discharge an individual debtor from any debt—

* * * * * *

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—

(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;

* * * * * *

(4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny;

* * * * * *

(6) for willful and malicious injury by the debtor to another entity or to the property of another entity.

* * * * * *

11 U.S.C. § 523(a) (in part). Under § 523(a)(2), (a)(4) or (a)(6), a plaintiff must prove his case by clear and convincing evidence. *Chase Bank Int. v. Klepach (In Re Bonanza Import & Export, Inc.),* 43 B.R. 577 (Bankr.S.D.Fla.1984).

■ As is clear from the Bankruptcy Code, a debt may be excepted from discharge under § 523(a)(6) [4] if the obligation arose through the debtor's willful or malicious injury to the plaintiff or his property. The meaning of the key phrase "willful and malicious injury" has been summarized as follows:

In order to fall within the exception of section 523(a)(6), the injury to an entity or property must have been willful and malicious. An injury to an entity or property may be malicious injury within this provision if it was wrongful and without just cause or excessive, even in the absence of personal hatred, spite or ill-will. The word "willful" means "deliberate or intentional", a deliberate and intentional act which necessarily leads to injury. Therefore, a wrongful act done

---

**4.** Homemakers has advanced its arguments for an exception to discharge under § 523(a)(2)(A) and (a)(4) rather than under § 523(a)(6). This is not to say that a rational result cannot be predicated on § 523(a)(2)(A) or (a)(4), but only that a result based on § 523(a)(6) is more clearly tenable under the facts of this case.

intentionally, which necessarily produces harm and is without just cause or excuse, may constitute a willful and malicious injury.

*Eck v. Schuck (In Re Schuck)*, 27 B.R. 644 (Bankr.M.D.Pa.1982), quoting, 3 *Collier on Bankruptcy*, ¶ 523.16[1] (15th ed.1979).

As applied to the case before us, it is clear that the debtor intentionally and knowingly misappropriated customer leads from Homemakers and used them to generate her own profits with deleterious consequences to the company. It is also quite apparent that the debtor undertook this course of conduct fully realizing that Homemakers would suffer lost profits. No just cause or excuse has been offered to exculpate the debtor's actions, and it appears that the motivation behind the scheme was nothing less ignoble than avarice.

The debtor has attempted to undermine Homemakers' case by asserting that some of the sales she made on her own behalf consisted of goods not carried by Homemaker. While there may be some truth to this averment, the debtor has not supported her assertion with specific values for goods sold. She also contends that she sold her own goods only after she was satisfied that a customer would not buy the wares of her employer. This defense was vanquished by the debtor's meager credibility.

Accordingly, while we will deny Homemakers' complaint seeking a denial of the debtor's discharge under § 727(a), we will except from her discharge the amount of $55,741,14 under § 523(a) for the reasons heretofore set forth.