In re Kenneth C. HORLDT, Debtor.

**ITT CONSUMER DISCOUNT COMPANY, Plaintiff,**

v.

**Kenneth C. HORLDT, Defendant.**

**Bankruptcy No. 85–03374T.**
**Adv. No. 85–1120.**

United States Bankruptcy Court,
E.D. Pennsylvania.

May 24, 1988.

Frank L. Majczan, Jr., Allentown, Pa., for plaintiff, ITT Consumer Discount Co.

Jon M. Saltzman, Allentown, Pa., for debtor-defendant, Kenneth C. Horldt.

## MEMORANDUM OPINION

THOMAS M. TWARDOWSKI,
Bankruptcy Judge.

Presently before the court is an adversary complaint filed by Plaintiff, ITT Consumer Discount Company ("plaintiff"), against the Debtor, Kenneth C. Horldt ("debtor"), which requests that this court determine whether the debt owed plaintiff by debtor is nondischargeable under 11

U.S.C. § 523(a)(6).[1]

The facts of this case are not complex. Sometime prior to March 6, 1985, debtor received a letter from plaintiff which advised him that if he could verify an annual income of at least $12,000.00, he would be eligible for a $2,000.00 loan from plaintiff. (Notes of Testimony, June 17, 1987 ("N.T.") at 21, 22, 36). In response, debtor visited plaintiff's branch office on March 6, 1985 and completed an application for a loan (N.T. at 4–6). After plaintiff performed a credit check on debtor, plaintiff approved debtor's application and debtor executed a Note payable to plaintiff and a U.C.C. financing statement, form 1. (N.T. at 8, 25). The U.C.C. financing statement granted plaintiff a security interest in one VCR, five pistols, three cameras and equipment and similar items of personal property. (N.T. at 9, Complaint to Determine Dischargeability of Debt, Exhibit "C"). Plaintiff filed the U.C.C. financing statement on March 11, 1985. (N.T. at 8). Shortly thereafter, debtor received a second letter from plaintiff advising him that he was eligible for another loan. (N.T. at 21–22, 24, 36). Debtor responded to the second letter by visiting plaintiff's branch office on June 3, 1985 to obtain a loan to refinance his original obligation to plaintiff. (N.T. at 11, 24, 25). On June 3, 1985, debtor executed a Note payable to plaintiff in the principal amount of $3,244.76 plus interest and finance charges (for a total amount of $4,608.00) and a U.C.C. financing statement, form 1, which once again gave plaintiff a security interest in one VCR, five pistols, three cameras and equipment and similar items of personal property (N.T. at 11, 30). Plaintiff filed this financing statement on June 17, 1985 (N.T. at 30). Sometime thereafter, but prior to August 14, 1985 (the date debtor filed for relief under Chapter 7), debtor sold the collateral which secured his indebtedness to plaintiff to various persons for approximately $1,500.00. (N.T. at 12, 40, 42, 43, 44). Debtor did not notify plaintiff before he sold the collateral to obtain plaintiff's consent to the sale. (N.T. at 12, 40, 42, 43, 44). The proceeds from the sale of the collateral were used by debtor to pay various bills, although debtor does not recall whether any of the proceeds were paid to plaintiff. (N.T. at 40, 41). Plaintiff first learned that the collateral had been sold at the § 341 meeting held in debtor's bankruptcy case on November 4, 1985. (N.T. at 12, 17, 18). Plaintiff maintains that the sale of the collateral by debtor, without plaintiff's consent and without the proceeds of the sale being delivered to plaintiff, caused plaintiff to suffer a "willful and malicious injury" as that phrase is used in 11 U.S.C. § 523(a)(6). Accordingly, plaintiff argues that the debt owed to it by debtor is not dischargeable. We disagree.

■ 11 U.S.C. § 523(a)(6) states:

(a) A discharge under Section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual from any debt—

\* \* \* \* \* \*

(6) for willful and malicious injury by the debtor to another entity or to the property of another entity;

\* \* \* \* \* \*

As I recognized in *First Valley Bank v. Ramonat* (*In re Ramonat*), 82 B.R. 714 (Bankr.E.D.Pa., 1988) controversy exists among the courts regarding the elements a creditor must prove to establish that the debtor's conduct caused him to suffer a "willful and malicious injury" under § 523(a)(6).

One view is that the creditor must prove that the debtor acted deliberately and intentionally with the specific intent to injure the creditor. *See Streeper v. Magosin* (*In re Magosin*), Bankr. No. 86–01200, Adv. No. 87–0954, slip op. (Bankr.E.D.Pa. April 29, 1988) [available on WESTLAW, 1988 WL 65738]; *Blackman v. Gaebler* (*In re Gaebler*), 83 B.R. 264 (Bankr.E.D.Pa.1988); *In re Ramonat, supra; Wilmington Trust*

---

**1.** The complaint filed by plaintiff also alleges that the debt owed plaintiff by debtor is nondischargeable under 11 U.S.C. § 523(a)(2)(B). However, plaintiff withdrew its § 523(a)(2)(B) claim at the hearing held on this matter on June 17, 1987. (Notes of Testimony, June 17, 1987 at 38).

*Company v. Behr (In re Behr )*, 42 B.R. 922 (Bankr.E.D.Pa.1984); *Morales v. Tanner (In re Tanner )*, 31 B.R. 338 (Bankr.S. D.Fla.1983); *Finberg v. Lean (In re Lean )*, 18 B.R. 189 (Bankr.E.D.Pa.1982); *In re Hinkle*, 9 B.R. 283, 7 B.C.D. 349, B.L.D. para. 67,873, 3 C.B.C.2d 878 (Bankr. D.Md.1981); *Grand Piano & Furniture Co. v. Hodges (In re Hodges )*, 4 B.R. 513, 6 B.C.D. 531, B.L.D. para. 67,678, 2 C.B.C.2d 566 (Bankr.W.D.Va.1980).

A second view is that the creditor need only prove that the debtor acted intentionally, without just cause or excuse (i.e., evidence of specific intent to injure the creditor is not required). *See Sunco Sales, Inc. v. Latch (In re Latch )*, 820 F.2d 1163 (11th Cir.1987); *Perkins v. Scharffe (In re Scharffe )*, 817 F.2d 392 (6th Cir.1987), U.S. *cert. denied,* — U.S. ——, 108 S.Ct. 156, 98 L.Ed.2d 112 (1987); *Impulsora Del Territorio Sur v. Cecchini (In re Cecchini )*, 780 F.2d 1440 (9th Cir.1986); *St. Paul Fire & Marine Insurance Company v. Vaughn (In re Vaughn )*, 779 F.2d 1003 (4th Cir. 1985); *First National Bank of Albuquerque v. Franklin (In re Franklin )*, 726 F.2d 606 (10th Cir.1984); *Kelt v. Quezada (In re Quezada )*, 718 F.2d 121 (5th Cir. 1983), U.S. *cert. denied,* 467 U.S. 1217, 104 S.Ct. 2662, 81 L.Ed.2d 368 (1984); *United Bank of Southgate v. Nelson (In re Nelson )*, 35 B.R. 766 (N.D.Ill.1983); *Homemakers, Inc. v. Salamone (In re Salamone )*, 62 B.R. 690 (Bankr.E.D.Pa.1986), reversed on other grounds, 71 B.R. 69 (E.D. Pa.1987) (District Court acknowledged split in authority over the meaning of "malice" but did not decide the issue); *Delaware Valley Factors, Inc. v. Smith (In re Smith )*, 56 B.R. 699 (Bankr.E.D.Pa.1986); *Commonwealth Land Title Insurance Co. v. Wolfington (In re Wolfington )*, 47 B.R. 225 (Bankr.E.D.Pa.1985); *Century Equipment Leasing Corp. v. Moscufo (In re Moscufo )*, 40 B.R. 530, B.L.D. para. 70,005 (Bankr.E.D.Pa.1984); *Mileasing Company v. Allavena (In re Allavena )*, 31 B.R. 73 (Bankr.E.D.Pa.1983); *Credithrift of America v. Auvenshine (In re Auvenshine )*, 9 B.R. 772, 7 B.C.D. 511, 3 C.B.C.2d 946 (Bankr.W.D.Mich.1981); *Ohio Citizens Trust Company v. Smith (In re Smith )*, 11 B.R. 20 (Bankr.N.D.Ohio 1981); *Farmers Bank v. McCloud (In re McCloud )*, 7 B.R. 819, B.L.D. para. 67,818, 3 C.B.C.2d 701 (Bankr.M.D.Tenn.1980).

A third approach is to require that the creditor prove that the debtor's conduct was "(1) headstrong and knowing ('willful') and, (2) targeted at the creditor ('malicious'), at least in the sense that the conduct is certain or almost certain to cause financial harm." *Barclays American/Business Credit, Inc. v. Long (In re Long )*, 774 F.2d 875, 881 (8th Cir.1985); *American Bank of Raytown v. McCune (Matter of McCune )*, 82 B.R. 510, 514 (Bankr.W.D.Mo.1987). In order to establish the "malice" component of § 523(a)(6) under this approach, the creditor must prove either that the debtor intended to harm him or that the debtor's conduct was so likely to produce injury that the debtor knew or should have known that his conduct would harm the creditor. *Barclays American/Business Credit, Inc. v. Long, supra; Matter of McCune, supra.*

A fourth approach, which has been characterized as a "totality of the circumstances" approach, adopts the position that an injury is "willful and malicious" under § 523(a)(6) if caused by conduct which the debtor knew or should have known was unauthorized and if the debtor failed to act in subjective good faith. This second prong is determined by inquiring into the reason for the debtor's conduct. *Coffing v. Burdick (Matter of Burdick )*, 65 B.R. 105 (Bankr.N.D.Ind.1986).

A review of the cases reveals that the controversy among the courts does not involve the "willful" prong of the § 523(a)(6) claim. In the context of a debtor who wrongfully sells collateral, the courts seem to agree that the debtor's conduct must have been intentional to be found "willful" under § 523(a)(6). Rather, the dispute among the courts in this context is over the meaning of the term "malicious." As can be seen from a review of the citations listed above, the bankruptcy courts in this district have, on different occasions, adopted both the view that in order for a creditor to establish the "malice" component of

§ 523(a)(6), the creditor must establish that the debtor acted with the specific intent to injure the creditor, *see In re Magosin, supra; In re Gaebler, supra; In re Ramonat, supra; In re Behr, supra; In re Lean, supra;* and the view that evidence of specific intent to injure the creditor is not required to establish "malice" under § 523(a)(6), *see In re Salamone, supra,* 62 B.R. 690 (Bankr.E.D.Pa.1986); *In re Smith, supra,* 56 B.R. 699 (Bankr.E.D.Pa. 1986), *In re Wolfington, supra; In re Moscufo, supra; In re Allavena, supra.* [2] Neither the District Court for the Eastern District of Pennsylvania nor the Third Circuit Court of Appeals has decided this question.

The controversy over the meaning of the term "malicious" as used in § 523(a)(6) arose initially as a result of the following language contained in the Senate Report on § 523(a)(6) of the 1978 Bankruptcy Code: [3]

Paragraph (5) provides that debts for willful and malicious injury by the debtor to another person or to the property of another person are nondischargeable. Under this paragraph, 'willful' means deliberate or intentional. To the extent that *Tinker v. Colwell,* 139 U.S. 473 [24 S.Ct. 505, 48 L.Ed. 754] (1902) [sic], held that a less strict standard is intended, and to the extent that other cases have relied on *Tinker* to apply a 'reckless disregard' standard, they are overruled.

S.Rep. No. 959, 95th Cong., 2d Sess. 79 (1978), U.S.Code Cong. & Admin.News 1978, pp. 5787, 5865, reprinted in Norton Bankruptcy Law and Practice, Bankruptcy Code, 1987–1988 Edition at 376.

In *Tinker v. Colwell,* 193 U.S. 473, 24 S.Ct. 505, 48 L.Ed. 754 (1904), the United States Supreme Court held that for a debt to be excepted from discharge under § 17(a)(2) of the Bankruptcy Act of 1898,[4] the debt must arise from or be related to a wrongful act, done intentionally, without just cause or excuse. The Supreme Court specifically noted that it was not necessary for the creditor to establish that the debtor acted with the specific intent to injure the creditor or with personal malevolence toward the creditor in order for the injury to be found "malicious" under § 17(a)(2). Rather, the Court held that malice could be implied from the facts and circumstances of the case. In dicta, the Court stated:

It is not necessary in the construction we give to the language of the exception in the statute to hold that every wilful act which is wrong implies malice. One who negligently drives through a crowded thoroughfare and negligently runs over an individual would not, as we suppose, be within the exception. True, he drives negligently, and that is a wrongful act, but he does not intentionally drive over the individual. If he intentionally did drive over him, it would certainly be ma-

---

**2.** Three recent cases decided by Bankruptcy Judge David A. Scholl, of this district, appear to align the bankruptcy judges of this district with those courts which require evidence of specific intent to injure to establish "malice" under § 523(a)(6). *See In re Magosin, supra; In re Gaebler; supra; Moribondo v. Lane (In re Lane),* 76 B.R. 1016 (Bankr.E.D.Pa.1987). The first case decided by Judge Scholl, *In re Lane,* was decided before my decision in *In re Ramonat, supra,* and announced its conclusion that specific intent to injure was required to prove "malice" only in dicta. The second case, *In re Gaebler,* relies, in part, upon my decision in *In re Ramonat, supra,* which I clarify today, for this conclusion. The third case, *In re Magosin,* contains only a finding that the debtor acted deliberately with specific intent to injure the creditor, followed by a citation to *In re Gaebler, supra,* with no discussion of the split in authority over the meaning of the term "malice" as found in § 523(a)(6). Given the decision I announce today, it is clear that *In re Ramonat,*

*supra,* may no longer be accurately cited for the simple proposition that direct evidence of specific intent to injure is a prerequisite to a finding of "malice" under § 523(a)(6) and that I may no longer be aligned with those courts which follow this approach. Rather, I will fully examine the facts of each case, as I did in *Ramonat,* to determine whether the plaintiff has met its burden of proving "malice," either with direct or circumstantial evidence, under § 523(a)(6).

**3.** It should be noted that the House Report on § 523(a)(6) contains almost identical language. *See* H.R.Rep. No. 595, 95th Cong., 1st Sess. 365 (1977), reprinted in Norton Bankruptcy Law and Practice, Bankruptcy Code, 1987–1988 Edition at 376.

**4.** § 17(a)(2) of the Bankruptcy Act of 1898 is the predecessor to § 523(a)(6) of the Bankruptcy Code.

licious. It might be conceded that the language of the exception could be so construed as to make the exception refer only to those injuries to person or property which were accompanied by particular malice, or, in other words, a malevolent purpose towards the injured person, and where the action could only be maintained upon proof of the existence of such malice. But we do not think the fair meaning of the statute would thereby be carried out. The judgment here mentioned comes, as we think, within the language of the statute, reasonably construed. The injury for which it was recovered is one of the grossest which can be inflicted upon the husband, and the person who perpetrates it knows it is an offense of the most aggravated character; that it is a wrong for which no adequate compensation can be made, and hence personal and particular malice towards the husband as an individual need not be shown, for the law implies that there must be malice in the very act itself, and we think Congress did not intend to permit such an injury to be released by a discharge in bankruptcy. *Id.* at 489–490, 24 S.Ct. at 509. Although the United States Supreme Court in *Tinker* clearly required that the debtor's conduct be both intentional and malicious to fall under the § 17(a)(2) exception to discharge, some courts relied upon *Tinker* to find debts based upon reckless conduct, as opposed to intentional or willful conduct, nondischargeable. *See Haerynck v. Thompson,* 228 F.2d 72 (10th Cir.1955); *Harrison v. Donnelly,* 153 F.2d 588 (8th Cir.1946); *Johnston v. Irwin,* 2 B.C.D. 783 (Bankr.N. D.Iowa 1976).

The seminal case to require evidence of specific intent to injure as a prerequisite to a finding of nondischargeability under § 523(a)(6) was *In re Hodges, supra.* In *Hodges,* the Bankruptcy Court for the Western District of Virginia reached this conclusion because it interpreted the legislative history behind § 523(a)(6) as overruling the entire holding of *Tinker v. Colwell,* including the holding that malice may be implied from the facts and circumstances of a case. *In re Hodges, supra.* Those

courts which reject this approach and conclude that malice can be established without direct evidence of specific intent to injure interpret the legislative history of § 523(a)(6) as addressing only the "willful" prong of § 523(a)(6) and as overruling only those cases which relied upon *Tinker* to find debts based upon reckless conduct nondischargeable. These courts conclude that the implied malice holding of *Tinker* remains intact. *In re Vaughn, supra; In re Nelson, supra; In re McCloud, supra.*

Since nothing in the legislative history of § 523(a)(6) indicates that Congress disagreed with the *Tinker* Court's analysis of the term "malicious" as found in § 17(a)(2) of the Bankruptcy Act, I support and adopt the reasoning of those courts which have concluded that the legislative history of § 523(a)(6) deals only with the "willful" prong of this section and was intended only to overrule those decisions which relied upon *Tinker* to find debts based upon reckless conduct, as opposed to intentional or willful conduct, nondischargeable. *See In re Vaughn, supra; In re Nelson, supra; In re McCloud, supra.* Therefore, I conclude that the Supreme Court's holding in *Tinker* that malice can be implied from the facts and circumstances of a case remains unaffected by the legislative history of § 523(a)(6).

Having reviewed the cases which deal with § 523(a)(6) in the context of a debtor who wrongfully disposes of collateral, I find it necessary to expand upon my position as enunciated in *In re Ramonat, supra.* In *Ramonat,* I stated that: "[a] review of the bankruptcy cases from this district suggests that we have previously required that plaintiffs prove (1) a deliberate or intentional act, and (2) an intent to injure." *Id.,* at 721. However, I now conclude that to require a creditor to establish that the debtor disposed of the collateral with the specific intent of injuring the creditor imposes a difficult, if not insurmountable, burden upon the creditor. On the other hand, to allow a creditor to have a debt owed him found nondischargeable merely upon a showing that the debtor acted intentionally, without just cause or excuse, and without further inquiring into the debtor's intent or knowledge of the wrongful nature

of his conduct, at least circumstantially, can cause severe harm to an innocent debtor. For these reasons, neither approach serves the main purpose behind the Bankruptcy Code, which is to enable an honest debtor to begin his financial life anew.

I believe the two approaches can be reconciled and equitable results achieved, however, by returning to the law as established in *Tinker v. Colwell, supra,* and recognizing that malice can be implied from circumstantial evidence. Accordingly, I hold that in the context of a debtor who wrongfully disposes of collateral, the debt secured by the collateral will be found nondischargeable under § 523(a)(6) if the creditor proves that the debtor acted (1) deliberately or intentionally (i.e. "willfully") and (2) with malice, recognizing that malice can be implied from the facts and circumstances of the case. Therefore, I clarify my prior decision in *In re Ramonat, supra,* and hold that it should not be interpreted to preclude a creditor from establishing malice circumstantially or to require that direct evidence of intent to harm the creditor or his property be introduced.

■ Turning to the facts of the case presently before me, I conclude that the debt owed plaintiff is dischargeable. A review of the record reveals that although plaintiff established that debtor acted deliberately and intentionally when he sold the collateral (i.e., "willfully"), absolutely no circumstantial evidence was produced by plaintiff from which I can infer that debtor's conduct was malicious.[5] Although the record supports a finding that debtor knew that the property he sold served as collateral to secure his indebtedness to plaintiff, (N.T. at 40, 42, 44), I find that this is not sufficient, at least in the context of a consumer debtor, to enable me to infer that debtor acted maliciously, even under a preponderance of the evidence standard.[6] The record is absolutely devoid of evidence regarding debtor's understanding of the security agreement and its legal implications. Specifically, no evidence was introduced to establish that debtor knew that the security agreement precluded him from selling the collateral.[7] I note that perhaps this could have been inferred from evidence regarding debtor's sophistication in the business world. However, no such evidence is contained in the record. Furthermore, the record reveals that debtor sold the collateral to raise money to pay his creditors. (N.T. at 40). This evidence tends to support a conclusion that debtor sold the collateral in an attempt to avoid injury to his creditors rather than with malice, especially in light of the paucity of evidence introduced by plaintiff to establish that debtor disposed of the collateral in conscious disregard of plaintiff's rights. For all the foregoing reasons, I find that the debt owed to plaintiff is dischargeable.

An appropriate order will follow.

---

**5.** Additionally, no direct evidence was introduced by plaintiff to establish that debtor sold the collateral with the specific intent of causing harm to plaintiff.

**6.** As a result, it is not necessary to decide whether plaintiff was required to prove his case with clear and convincing evidence or by merely a preponderance of the evidence, since plaintiff failed to meet its burden even under the less demanding preponderance of the evidence standard. As noted by the District Court for the Eastern District of Pennsylvania in *In re Salamone, supra,* 71 B.R. at 71, n. 10, "...The bankruptcy courts are in conflict as to whether the appropriate burden of proof is a preponderance of the evidence (citations omitted) or clear and convincing evidence (citations omitted) and it does not appear that any appellate court has resolved this issue." The District Court opted not to decide this question, since it found that the creditor failed to meet his burden of proving an injury—even under a preponderance of the evidence standard.

**7.** In fact, a review of the financing statement fails to uncover a clause which specifically prohibits debtor from disposing of the collateral without plaintiff's consent. Given the broad definition of "collateral" contained in the financing statement, this could have been a crucial factor. Furthermore, the broad definition of "collateral" contained in the financing statement may raise the question of whether an injury has in fact been sustained by plaintiff, since arguably, plaintiff may be entitled to claim a security interest in other property which has not been disposed of by debtor. However, since neither party has raised these issues, and since I am able to dispose of this case on other grounds, I will not delve into these questions.