In re Richard Adams
GAEBLER, Debtor.

Gary Francis BLACKMAN, Plaintiff,

v.

Richard Adams GAEBLER, Defendant.

Bankruptcy No. 87–02748S.
Adv. No. 87–0895S.

United States Bankruptcy Court,
E.D. Pennsylvania.

Feb. 22, 1988.
As Amended March 25, 1988.

Irving L. Abramson, Bala Cynwyd, Pa., for plaintiff.

Stuart A. Eisenberg, Philadelphia, Pa., for debtor-defendant.

Christopher G. Kuhn, Philadelphia, Pa., trustee.

## OPINION

DAVID A. SCHOLL, Bankruptcy Judge.

We are asked herein to determine the dischargeability of an obligation of the De-fendant–Debtor, RICHARD ADAMS GAE-BLER (hereinafter referred to as "the Debtor"), to the Plaintiff, GARY FRANCIS BLACKMAN (hereinafter referred to as "the Plaintiff"). The obligation arose from injuries suffered by the Plaintiff as a con-sequence of gunshot wounds inflicted by the Defendant. This incident resulted in a civil judgment of $109,897.05 in favor of the Plaintiff and a criminal conviction of attempted second-degree murder against the Debtor.

We are compelled to reject both parties' contentions that they should prevail on the basis of collateral estoppel arising from the state court cases, as we do not believe the requisites for applying collateral estoppel arise from either state court proceeding. Deciding the case on the brief record be-fore us and following the law of this court, which requires that the prevailing plaintiff in a proceeding under 11 U.S.C. § 523(a)(6) must establish both a deliberate or inten-tional act *and* an intention to injure the party-plaintiff on the part of the debtor, we are compelled to conclude that the Plaintiff has not met his burdens and that we must rule in favor of the Debtor.

The Debtor filed the underlying Chapter 7 bankruptcy case on June 4, 1987. On September 11, 1987, the Debtor moved to avoid alleged liens arising from the Plain-tiff's civil judgment against him in Colora-do and efforts to enforce that judgment in Indiana, and to hold the Plaintiff in con-tempt for proceeding in Indiana post-peti-tion. On October 8, 1987, the Debtor with-drew the contempt motion, and the lien avoidance motion was continued to Decem-ber 8, 1987, to be consolidated with the then-planned instant adversary proceeding. On October 16, 1987, this adversary com-plaint was filed, challenging the Debtor's right to a discharge on the basis of 11 U.S.C. § 727(a)(5), and the dischargeability of the Plaintiff's debt on the basis of 11 U.S.C. §§ 523(a)(2)(A) and (a)(6). The Debt-or filed an Answer and Counterclaim to the Complaint seeking reimbursement for at-torney's fees and costs, damages for time lost from employment, and punitive dam-ages. An Amended Complaint was later filed which merely added the Chapter 7 Trustee as a party-defendant. The Trustee filed an Answer taking no position on the matter.

After a continuance of both the lien-avoidance motion and this proceeding from December 8, 1987, to January 14, 1988, the Debtor withdrew his Motion and a brief trial on the adversary proceeding only was conducted. The only person to testify was the Debtor, called as his own witness by the Plaintiff.

No effort was made to pursue a cause of action under § 523(a)(2)(A). The lack of

evidence to support the § 727(a)(5) claim was so apparent that we dismissed this cause of action at the close of the hearing. We then issued an Order of January 15, 1988, establishing a briefing schedule on the § 523(a)(6) cause. Since the Plaintiff had submitted a Memorandum of Law at trial, the Debtor was afforded the opportunity to file a Brief on or before January 25, 1988, and the Plaintiff was permitted to file a Reply Brief on or before February 1, 1988. We are preparing this resulting Opinion in the format of Findings of Fact, Conclusions of Law, and a Discussion due to the requirements of Bankruptcy Rule 7052 and Federal Rule of Civil Procedure 52(a).

## FINDINGS OF FACT

1. The Debtor testified that, while under the care of a psychiatrist for extreme depression, in the first week of January, 1983, he was "lured back" to Colorado Springs, Colorado, from Seattle, Washington, by his ex-wife, Kennetha Hildebrand, and the Plaintiff, with whom Ms. Hildebrand was having "a carnal relationship."

2. The Debtor went to Ms. Hildebrand's apartment with a gun, which he stated that "mental health professionals have speculated was intended for my suicide," became involved in a physical struggle with the Plaintiff in the apartment, and shot the Plaintiff five times and himself in the arm once with the gun.

3. The Debtor claimed that he did not intend to shoot the Plaintiff, had no recollection of actually doing so, and stated that he "was, in the words of one psychiatrist, out of my mind at the time."

4. On two occasions during the hearing, the Debtor over-reacted emotionally to statements by the court and opposing counsel. He thus appeared to be suffering from mental illness, and he impressed us as forthright and credible, particularly in assessing his mental illness at the time of the incident in issue.

5. As a result of the shooting, the Debtor was arrested and charged with one count of attempted murder in the second degree, see C.R.S. (Colorado Revised Statutes), §§ 18-2-101 and 18-3-103, and two counts of assault in the first degree, see C.R.S. § 18-3-202.

6. The Debtor was represented by counsel in the criminal proceeding. The Debtor pled guilty to the charges. No plea of self-defense was ever made. In the colloquy in which he entered his plea, the Debtor stated that the shooting was "knowing," but not "intentional."

7. On October 21, 1983, the Debtor was sentenced to prison at the correctional facilities at Canon City, Colorado, for a term of eight years on all counts.

8. On December 28, 1984, the Debtor was granted probation for five years subject to certain conditions, including participation in counselling.

9. Subsequent to the Debtor's plea of guilty and while the Debtor was incarcerated, the Plaintiff filed a civil suit against the Debtor in the Colorado state courts seeking to recover damages for resultant injuries and other consequential and punitive damages arising out of the shooting incident. Both the Debtor and the Plaintiff were represented by counsel in this case.

10. Prior to trial in this civil matter, the court granted the Plaintiff's motion for summary judgment on the theory of simple negligence. The Plaintiff then waived his claims for intentional or willful and wanton misconduct, and for punitive damages.

11. Thereafter, a trial on the issue of damages only took place on March 6, 1984. The Debtor admitted to the reasonableness and necessity of the medical bills submitted by the Plaintiff in the amount of $23,-788.49.

12. Both sides entered into a Stipulated Pre-trial Order which provided, *inter alia,* that the disputed issues of fact to be determined were the amount of damages for pain and suffering, loss of income, and permanent injuries.

13. On March 7, 1984, the trial judge entered an Order of Judgment awarding the Plaintiff $23,788.00 for medical expenses, $75,000.00 for pain and suffering and permanent injuries, $11,000.00 for in-

terest from January 28, 1983, the date of filing, and costs of $109.05, a total of $109,-897.05.

## CONCLUSIONS OF LAW

■ 1. The proceeding cannot be resolved in favor of either party on the basis of res judicata, or collateral estoppel, arising out of either the state court civil or criminal proceedings.

■ 2. The Plaintiff was obliged to prove, by a preponderance of evidence, that (1) The shooting was an intentional or deliberate act; and (2) The Debtor intended to injure the Plaintiff, to prevail in a complaint challenging dischargeability on the basis of 11 U.S.C. § 523(a)(6).

■ 3. Given the limited record at the hearing, the Plaintiff failed to prove either of these elements by a preponderance of the evidence.

4. The claim of the Plaintiff against the Debtor is dischargeable.

## DISCUSSION

Although the Plaintiff referred alternatively to § 523(a)(2)(A) as a cause of action in his Amended Complaint, in his Briefs the Plaintiff relied solely upon § 523(a)(6) as the basis for objecting to the dischargeability of the obligation in issue. Section 523(a)(6) provides that a debtor shall not be discharged from any debt "for willful and malicious injury by the debtor to another entity or to the property of another entity."

In *In re Lane,* 76 B.R. 1016, 1023 (Bankr. E.D.Pa.1987), we acknowledged a division of authority in interpreting § 523(a)(6) thusly:

... the interpretation of the terms "willful and malicious" is critical to a determination of dischargeability. Courts have been divided as to whether the statute requires an act with intent to cause injury, *In re Finnie,* 10 B.R. 262, 264 (Bankr.D.Mass.1981); *In re Hinkle,* 9 B.R. 283, 286 (Bankr.D.Md.1981); *In re Graham,* 7 B.R. 5, 7 (Bankr.D.Nev.1980); and *In re Hodges,* 4 B.R. 513, 516 (Bankr.D.Va.1980); or whether the statute encompasses an intentional act which

results in injury, a much broader standard. *Perkins v. Scharffe,* 817 F.2d 392, 394 (6th Cir.1987); *In re Cecchini,* 780 F.2d 1440, 1443 (9th Cir.1986); *In re Franklin,* 726 F.2d 606, 610 (10th Cir. 1984); ...

We went on to state that we found ourselves aligned with those courts which have interpreted § 523(a)(6) to require an intent to cause injury, thus reading this exception to discharge narrowly. ·

■ We are convinced that our statements in *Lane* are and should be the law of this court. Our starting point is our general observation regarding objections to discharge: they "must be construed strictly against the objector and liberally in favor of the debtor" in order to further the public policy "that objections to discharge not be easily granted" in order to provide the debtor his maximum post-bankruptcy "fresh start," and discourage harassment of debtors by disgruntled creditors through the medium of· liberally-construed dischargeability complaints. *In re Woerner,* 66 B.R. 964, 971 (Bankr.E.D.Pa.1986), *aff'd,* C.A. No. 86–7324 (E.D.Pa. April 28, 1987). *See also In re Fitzgerald,* 73 B.R. 923, 926 (Bankr.E.D.Pa.1987).

We acknowledged in *Lane, supra,* the decisions of the Court of Appeals of several Circuits to the contrary of our views, *e.g., Perkins, supra; Cecchini, supra;* and *Franklin, supra,* all of which have adopted a "looser standard," i.e., not requiring the § 523(a)(6) plaintiff to establish that the Debtor had an *intent* to cause injury. However, the judges of this court have uniformly rejected such a "looser standard." Thus, in his recent decision in *In re Ramonat,* 82 B.R. 714, 721 (Bankr.E.D.Pa. 1988), Chief Judge Thomas M. Twardowski stated that a § 523(a)(6) plaintiff is required to prove "(1) a deliberate or intentional act, *and* (2) an intent to injure." (emphasis added). Cited by our Chief Judge in support of this holding are two decisions of our own immediate predecessor, the Honorable William A. King, Jr., which reached the same conclusion. *In re Behr,* 42 B.R. 922, 925 (Bankr.E.D.Pa.1984) (in which Judge King

cited the Bankruptcy Appellate Panel decision ultimately reversed by the Ninth Circuit Court of Appeals in *Cecchini, supra,* reported at 37 B.R. 671, 674–75 (9th Cir. Bankr.App.1984), with approval); and *In re Lean,* 18 B.R. 189, 191 (Bankr.E.D.Pa. 1982).

Our district court, in *In re Salamone,* 71 B.R. 69, 70 (E.D.Pa.1987), recently acknowledged, but failed to resolve, the differing interpretations of § 523(a)(6). As the *Salamone* court points out, the Court of Appeals of several Circuits have reached the same result as this court, citing *In re Long,* 774 F.2d 875, 880 (8th Cir.1985). Further, the court in *In re Compos,* 768 F.2d 1155, 1158, 1159 n. 2 (10th Cir.1985), like Judge King in *Behr, supra,* cited to the reasoning of the Bankruptcy Appellate Panel in *Cecchini* with approval, preferring its result to that of the Ninth Circuit Court of Appeals in *In re Adams,* 761 F.2d 1422 (9th Cir.1985), which that court followed in *Cecchini.* We find the reasoning of other Circuits which have addressed the issue to be non-committal. *See In re Quezada,* 718 F.2d 121, 123 (2d Cir.1983); and *Seven Elves, Inc. v. Eskenazi,* 704 F.2d 241, 245–46 (5th Cir.1983). Thus, given this split of authority, and our belief that exceptions to discharge must generally be construed narrowly, we follow our prior decisions in requiring that a successful § 523(a)(6) plaintiff prove an intent to injure on the part of the Debtor.

Although the Plaintiff has not made reference to same, we are aware of several factually analogous cases which have denied dischargeability to debtors who caused injuries to § 523(a)(6) plaintiffs by the use of weapons. *See In re Wilson,* 49 B.R. 952 (Bankr.M.D.Ala.1985) (debtor shot neighbor in the groin during a domestic dispute); *In re Beach,* 39 B.R. 56 (Bankr.W.D.Ky.1984) (debtor blew away part of waitress's arm with a gun in the course of a tavern brawl); *In re Irvin,* 31 B.R. 251, 252 (Bankr.D. Colo.1983) (debtor attacked her lover with a knife and then refused to allow her to get medical treatment for several hours); and *In re LaCasse,* 28 B.R. 214 (Bankr.D.Minn. 1983) (debtor repeatedly discharged an automatic shotgun into a stranger's camper

bus). *But see Quezada, supra* (harboring a dangerous pit bulldog and negligently letting the animal escape does not render the debtor's liability non-dischargeable).

Before analyzing the facts of the instant case in light of the foregoing authority, we first address the issue of the impact of res judicata or collateral estoppel on our disposition.

The standards for applying collateral estoppel in dischargeability cases was enunciated by us thusly in *In re Somerville,* 73 B.R. 826, 837 (Bankr.E.D.Pa.1987):

> ... the applicability of collateral estoppel can only be made after a careful review of the entire record of the prior case, from which the Court must find that the following four requirements are met in order to bar relitigation of the dischargeability issue: (1) That the issue sought to be precluded is the same as that involved in the prior action; (2) That issue has actually been litigated; (3) That the issue has been determined by a valid and final judgment; and (4) That the determination of the issue was essential to the prior judgment. *In re Ross,* 602 F.2d 604, 608 (3d Cir.1979).

*Accord, Brown v. Felson,* 442 U.S. 127, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979); and *In re Daley,* 776 F.2d 834 (9th Cir.1985).

The state civil judgment entered against the Debtor here was rendered on the basis of a summary judgment on only the negligence count in the civil suit. The Plaintiff's claims based on intentional or willful and wanton misconduct in the civil action were not precluded, as there was no determination whatsoever as to these issues. Hence, there was no valid and final judgment regarding whether the shooting occurred willfully or maliciously or not. There was only a determination that the Debtor acted at least negligently. Hence, none of the criteria for collateral estoppel enunciated in *Ross* or *Somerville* have been fulfilled as to the civil action.

We also reject the Plaintiff's assertion that the Debtor's conviction of attempted second-degree murder constitutes collateral estoppel in his favor, although here the

issue is more subtle. The pertinent Colorado statute defines murder in the second-degree, of which the Debtor was convicted of attempting, as causing "the death of a person knowingly, but not after deliberation." C.R.S., § 18–3–103(1)(a). "Diminished responsibility due to lack of mental capacity ... is not a defense...." *Id.,* § 18–3–103(2).

The definitive interpretation of the term "knowingly" in the context of this statute is the decision of the Colorado Supreme Court en banc in *People v. Marcy,* 628 P.2d 69, 75–80 (Colo.1981). There, the Court explained that, in 1977, the statute was amended to change the term which previously appeared therein, i.e., "intentionally," which rendered second-degree murder "a specific intent crime," to "knowingly." *Id.* at 75. The effect of this amendment was to change that particular crime to "a general intent crime." *Id.* at 75–78. Thus, a party guilty of second-degree murder may exhibit "universal malice," but not particularized malice directed at the victim. *Id.* at 76. This distinction might have supported a determination by the state criminal court that the Debtor committed a deliberate or intentional act which could have resulted in the Plaintiff's death ("universal malice"), but not a specific intent to kill or injure the Plaintiff ("particularized malice").

We believe that this analysis of the pertinent Colorado statutes does not support the Plaintiff's contention that the Debtor's conviction of second-degree murder collaterally estops the Debtor from denying the presence of both requisite elements of § 523(a)(6), especially the requirement of a particularized "intent to injure" the Plaintiff. We feel, in the last analysis, that the hair-splitting necessary to interpret the Colorado criminal statutes may not be the same as the reasoning in which we must engage to determine whether the criteria of § 523(a)(6) have been met. There is also a distinct possibility that the Debtor's conviction was simply expedient plea-bargaining, to which we are reluctant to attach collateral estoppel effect. *Accord, In re Louis,* 49 B.R. 135, 137–38 (Bankr.E.D.Wis. 1985). Hence, we conclude that the exacting criteria established by *Ross* and *Somer-*

*ville* are not met as to this contention either.

With his argument based on collateral estoppel eliminated, the plaintiff is left with a record which consisted solely of the testimony of the Debtor. Even taking into full consideration the self-serving nature of much of the Debtor's testimony, we conclude that the Debtor's testimony, particularly that describing his mental impairments at the time of the incident, was credible. *Compare In re Mistry,* 77 B.R. 507, 510, 512–13 (Bankr.E.D.Pa.1987), *aff'd sub nom. Writer v. Mistry,* C.A. No. 87–6466 (E.D.Pa. Feb. 9, 1988; and *Somerville, supra,* 73 B.R. at 833, 837, 838 (Debtors found not credible; debts not discharged). The Debtor definitely impressed us as an individual who previously had suffered and was still suffering from mental illness. Due to these mental impairments, the Debtor testified that he had no clear recollection of the incident, did not intend to shoot the Plaintiff, and had the gun in his possession only to turn upon himself. Neither the Plaintiff nor any other party was present to refute any of these assertions on the record.

In all of the "weapon" cases cited at page 10 *supra,* testimony to refute self-serving statements of the respective debtors was presented. In *Wilson, supra,* the court expressly refused to believe the testimony of the debtor and his wife, contrasted to that of the plaintiff and his wife. The *Irvin* debtor, attributing a violent attack to her lover to a "pre-menstrual syndrome," was established to have committed numerous violent attacks on the victim in this instance and others in the past not related to her menstrual period. The *LaCasse* debtor, claiming that he attached the plaintiff's camper due to drug-induced hallucinations, submitted only an affidavit raising such issues—and no such issues had been mentioned in prior state court dispositions.

Given the Plaintiff's burden to establish the element of an "intent to injure" the Plaintiff, as well as an intentional or deliberate act on his part, we find that the record is insufficient to permit the Plaintiff to do so. There is no evidence whatsoever

that the Debtor really did intend to injure the Plaintiff. All that appears in the record are his credible denials of such an intention.

 What we are being asked to do by the Plaintiff is find that the very fact of the shooting and resulting injury establish an exception to discharge under § 523(a)(6) on a theory akin to *res ipsa loquitur.* We decline to do so.

Because there were no trials on the merits, and consequently no transcripts to introduce, from either the state criminal or civil cases, it was incumbent upon the Plaintiff to place evidence into the record so as to enable us to make findings of fact regarding "willful and malicious injury" and the Debtor's intent to injure the Plaintiff.[1]

The Debtor did plead guilty to criminal charges including attempted murder in the second degree. However, given our discussion at page 12 *supra,* in addition to declining to find any collateral estoppel effect from this proceeding, we cannot hold as a matter of law that a conviction of this offense establishes the dual requirements of § 523(a)(6) *per se.* More facts would have been needed to develop the circumstances surrounding the shooting to establish that the Debtor acted deliberately or intentionally *and* with an intent to injure the Plaintiff.

 Finally, we can discern no basis on which to find in the Debtor's favor on his Counterclaim. Despite the Amended Complaint's reference to § 523(a)(2)(A), we believe that the action was based solely upon § 523(a)(6) and that therefore § 523(d) is inapplicable. Certainly, the Plaintiff's Complaint was not spurious, since the Debtor's having shot the Plaintiff five times would clearly seem to have been conduct which, with the proper proofs, could

have stated grounds for non-dischargeability under § 523(a)(6).

An appropriate Order will be entered.

## ORDER

AND NOW, this 22nd day of February, 1988, after trial of this proceeding on January 14, 1988, and upon consideration of the respective Briefs of the parties, it is hereby ORDERED as follows:

1. Judgment on the Complaint is entered in favor of the Debtor–Defendant, RICHARD ADAMS GAEBLER, and against the Plaintiff, GARY FRANCIS BLACKMAN, and the Debtor's obligation to the Plaintiff is held to be dischargeable.

2. Judgment on the Debtor's Counterclaim is entered in favor of the Plaintiff and against the Debtor, and the Counterclaim is therefore dismissed with prejudice.

---

1. The Plaintiff's counsel read and questioned the Debtor from an uncertified copy of a transcript of some proceeding in the criminal action against the Debtor, apparently when he entered his plea. However, the Plaintiff did not seek to introduce a certified copy of this transcript into the record here. Instead, the Plaintiff's counsel attempted to have the Debtor adopt his previous utterances for the record herein by reading from the purported transcript. The Debtor declined to adopt the exact wording, claiming that either he did not remember or agreeing only that he had previously said something substantially and generally along the lines of what Plaintiff's counsel was reading. We did not find this "evidence" to be very helpful to the Plaintiff's cause.