In re Ronald HARLAND, Debtor.

KV Pharmaceutical Company,
Plaintiff,

v.

Ronald Harland, Defendant.

Bankruptcy No. 98–19324DAS.
Adversary No. 99–0028.

United States Bankruptcy Court,
E.D. Pennsylvania,
Philadelphia Division.

July 1, 1999.

---

Stuart A. Eisenberg, Warminster, PA, for debtor.

Frank Lo Bosco, Mason, Taylor & Colicchio, Princeton, NJ, for plaintiff.

Barry A. Solodky, Lancaster, PA, Trustee.

Frederic Baker, Ass't. U.S. Trustee, Philadelphia, PA, United States Trustee.

## OPINION

DAVID A. SCHOLL, Bankruptcy Judge.

### A. INTRODUCTION

The instant adversary proceeding ("the Proceeding") challenging dischargeability of obligations for which the Debtor was determined liable in a prior state court action tests the collateral estoppel effect of that state court determination on claims based upon 11 U.S.C. §§ 523(a)(4) and (a)(6). We conclude that the very detailed state court determination supports a claim under the embezzlement prong of § 523(a)(4), but not under the demanding standards of § 523(a)(6) established in *Kawaauhau v. Geiger*, 523 U.S. 57, 118 S.Ct. 974, 140 L.Ed.2d 90 (1998), which neither party cites. We also conclude that, despite the very specific breakdown of damages attributable to each claim by the state court, the entire claim of the Plaintiff is non-dischargeable.

### B. PROCEDURAL AND FACTUAL HISTORY

RONALD HARLAND ("the Debtor") filed the underlying individual voluntary Chapter 7 bankruptcy case on July 22, 1998. On January 21, 1999, KV PHARMACEUTICAL COMPANY ("the Plaintiff") filed the Proceeding, seeking therein a determination of nondischargeability relative to the amount still outstanding from a judgment ("the Judgment") entered against the Debtor by the Circuit Court of the County of St. Louis, Missouri ("the State Court") in 1994. The Plaintiff contends that the entire Judgment, in the amount of $131,994.76, is a nondischargeable debt because it arose from fraudulent conduct which was manifested in willful and malicious injury to the Plaintiff perpetrated by the Debtor during and subsequent to his tenure as the Plaintiff's employee. In addition to a finding of nondischargeability, the Plaintiff has requested attorneys' fees and any further relief deemed appropriate by this court.

In response, the Debtor filed an Answer on February 3, 1999, asserting Affirmative Defenses and a Counterclaim. Therein he argued, relying on a technical assessment of the language and phrasing found in the State Court's Judgment and orders, as compared to the specific language set out in §§ 523(a)(4) and (a)(6), there was no direct match between the two. Pegging his approach of each amount awarded by the State Court to this linguistic analysis, the Debtor observes that the State Court

used neither the exact phrase "willful and malicious injury" as appears in 11 U.S.C. § 523(a)(6), nor did it, in so many words, award damages for "fraud or defalcation while acting in a fiduciary capacity, embezzlement or larceny," pursuant to 11 U.S.C. § 523(a)(4). Alternatively, the Debtor points out that the sole awards that might be construed as qualifying under the § 523(a)(4) exception for fraud, amounts totaling only $2.00, have already been paid in full, as acknowledged in the Partial Satisfaction of Judgment submitted as part of the State Court record. Further, boldly alleging that the nondischargeability complaint was frivolous, the Debtor counterclaimed for attorneys' fees for his efforts in defending against the Proceeding.

In light of the Judgment, the parties already possessed a record of detailed findings of fact and conclusions of law relevant to their dispute. The initial Judgment of September 16, 1994, consisting of 58 pages of findings and conclusions, found for the Plaintiff on all of its claims for breach of contract and fraud. In a Supplementary Order of October 18, 1994, the State Court set the damages as follows: the sum of $27,414.18 for attorneys' fees incurred in the underlying litigation and dispute; $75,000 for "additional fees" incurred in enforcing the contract; $14,-790.29 for attorneys' fees in pursuing a Motion for contempt; and $14,790.29 for attorneys' fees incurred in pursuing a Motion to Dismiss and for Sanctions.

Prior to the trial of the Proceeding, scheduled on a must-be-heard basis on June 3, 1999, the parties agreed to present the case on a stipulated record which consisted solely of the State Court's Judgment and other related orders.[1] When they failed to appear or to submit the Stipulation or proposed dates for briefing, we set June 11, 1999, as the date for submission of the Stipulation and opening briefs; and June 18, 1999, as the date for submission of reply briefs. The Stipulation and opening briefs were timely submitted by both sides, and only the Plaintiff chose to submit a reply brief. In stating the facts, we will rely on the findings of the State Court which are relevant to the questions presented to us.

In 1990 the Debtor, a chemical engineer by training, was employed by the Plaintiff, a drug manufacturer, as a manager in its Discovery Research Department, where he had access to sensitive and potentially lucrative proprietary information belonging to the Plaintiff. Recognizing the sensitive nature of the pharmaceutical research material it was entrusting to the Debtor's care, the Plaintiff required that a standard employment contract be executed as a condition of the Debtor's employment. The agreement included, *inter alia*, details, a confidentiality clause, a non-compete provision, and a provision that any scientific research which the Debtor developed during the course of his employment not only was the property of the Plaintiff, but also was required to be recorded in lab books provided by and thereafter deemed the sole property of the Plaintiff. The State Court found, although same was disputed, that the Debtor signed the employment contract, agreed to these particular terms, and ostensibly abided by them during the course of his employment which ran from approximately June 6, 1990, until mid-September, 1993.

The State Court found that the Debtor not only did not abide by the terms of the employment contract after his departure from employment with the Plaintiff, but also that he never intended to do so. Rather, it stated, rather bluntly, that the Debtor entered into the employment

1. This form of presentation was an unnecessarily risky undertaking by the Plaintiff, which could have preliminarily tested the sufficiency of such a record to sustain its position by filing a motion for summary judgment. *See In re Kridlow*, 233 B.R. 334, 342 (Bankr.E.D.Pa.1999) (summary judgment is often appropriate when collateral estoppel is asserted) and then have proceeded to trial if and only if the State Court Judgment had been found insufficient to support a judgment in its favor on dischargeability.

agreement knowing that he did not plan to comply with the non-compete provision and intending that the Plaintiff rely upon his false representation in agreeing to it. The State Court also found that the Debtor began seeking another position where he could utilize the information which he obtained from his employment with the Plaintiff almost immediately following the commencement of his employment with the Plaintiff. In thus attempting to improve on the salary paid by the Plaintiff, the Debtor rejected one offer as too low before eventually taking a position with one of the Plaintiff's direct competitors, R.P. Scherer Co. ("Scherer"), very shortly after he left the Plaintiff.

During the period of his employment with the Plaintiff, the Debtor had engaged in the research for which he had been hired and recorded his work in a series of twenty-six (26) lab books representing the Plaintiff's trade secrets and confidential business information. The books specifically contained secret formulas and compilations of information, patterns or devices which the Plaintiff developed at considerable expense, which it utilized in its business operations, and which gave the Plaintiff an advantage over competitors as long as they remained exclusively within the Plaintiff's knowledge. Judgment, at ¶ 12. Despite, per the State Court, the presence of a valid confidentiality agreement in effect when he began his job search, directly applicable to the trade secrets entrusted to him, the Debtor revealed at least some proprietary information to Scherer during his negotiations for employment with that firm. Specifically, the Debtor revealed the identity, nature and characteristics of technologies then in the Plaintiff's research pipeline, products in development, the Plaintiff's idea for an entirely new dosage form for over-the-counter medications, and the results of several experiments the Plaintiff had conducted in developing this last concept. Judgment, at ¶ 30.

Upon the Debtor's announced intention to leave the Plaintiff's employment, in accordance with its normal procedures, the Plaintiff asked the Debtor to sign an affidavit attesting that he had returned all of the Plaintiff's property to it, including any and all documents which contained the Plaintiff's trade secrets. The Debtor signed the affidavit, but the State Court found that he did so only in order to mislead the Plaintiff into believing that he had in fact returned all of the Plaintiff's property. Judgment, at ¶ 17. Actually, at that time the Debtor had in his possession duplicate copies of the pages from all twenty-six (26) lab books, as well as numerous other documents which contained the Plaintiff's trade secrets and confidential information. *Id.* at ¶ 27.

Concurrent with the Debtor's revelation to the Plaintiff of the identity of his new employer as one of its direct competitors, the Debtor also revealed plans to work on a project requiring application of the proprietary research in which he had engaged during his employment with the Plaintiff. The State Court determined that the Plaintiff acted reasonably and in accordance with the agreement between the parties when it sought to enforce the employment contract. Only after first failing to secure a voluntary dismissal of the Debtor from Scherer did the Plaintiff file a claim in the State Court, asserting breaches of contract and fraud on the Debtor's part.

In declaring the employment contract between the parties valid and enforceable, the State Court found that Plaintiff had proven "by any standard, be it beyond a reasonable doubt, clear and convincing evidence, or the preponderance of the evidence," that the Debtor's employment by a competitor pharmaceutical company violated the non-competition provision of that contract. Judgment, at ¶ 71. *See also id.* at ¶ 90. Furthermore, it found that the Debtor breached the confidentiality provision, and that the Debtor "[took and kept] the duplicate pages from the 26 lab books and other documents containing [the Plaintiff's] trade secrets." *Id.* at ¶ 72. The

State Court specifically highlighted the Debtor's failure to return the Plaintiff's property upon termination, in direct contravention of Paragraph Ten of the contract, which reads as follows:

Return of Property. Upon the termination of Employee's employment with KV, regardless of how, when and why that employment ends, Employee shall immediately deliver to KV all property of KV and all property of the Companies, including, but not limited to, all records and documents (including all copies) containing or relating to Confidential Information.

Judgment, at ¶ 73.

The State Court further found that, despite his signature agreeing to this provision, the Debtor "took and kept approximately 2600 duplicate lab book pages and other documents containing [the Plaintiff's] trade secrets and confidential information." *Id.* at ¶ 74. Concluding that the Debtor's "action constituted theft of KV's property," *id.* at ¶ 83, the State Court characterized the Plaintiff's claims as valid "not for what [the Debtor] had in his head when he left the Plaintiff's employ, but rather for what he *improperly took* with him." *Id.* at ¶ 78 (emphasis added).

Prior to the trial the State Court ordered the Debtor to return the lab books to the Plaintiff, as their rightful owner. The Debtor failed to return them. Addressing this action, the State Court determined the Debtor's conduct was "reprehensible and without justification", *id.* at ¶ 111, and granted the Plaintiff's Motion for Contempt of a Court Order based upon this conduct.

In resolving the Plaintiff's claim for fraud, the State Court examined the various misrepresentations which it found that the Debtor had made to the Plaintiff in his effort to secure his position with the Plaintiff. Concluding that the Debtor never intended to honor the employment contract between them, the court concluded, "beyond any question and under any standard of proof, including beyond a reasonable doubt, that [the Debtor] intended to and did, in fact, perpetuate a fraud on [the Plaintiff]." *Id.* at ¶ 99. The State Court specifically found, as a result, that the Debtor's misrepresentations to the Plaintiff were made "intentionally, knowingly, maliciously and wantonly." *Id.* at ¶ 118. In light of these conclusions, the State Court rendered judgment for the Plaintiff and also granted the Plaintiff's Motion to Dismiss the Debtor's Counterclaims and for Sanctions against the Debtor.

Because the record before us consists only of the State Court's Judgment and later orders, we must only determine whether, in applying principles of collateral estoppel to the aforesaid decisions of the State Court, the elements of the Bankruptcy Code sections invoked by the Plaintiff should yield a determination of nondischargeability.

## C. DISCUSSION

1. *As the Parties Apparently Agree, They Are Bound by the Factual Findings and Conclusions of Law in the State Court's Judgment and Orders Which Are Relevant to Our Determination.*

Without setting out their reasoning process in detail, both parties, we think accurately, recognize that the findings of fact and conclusions of law reached by the State Court are binding on them. The Plaintiff believes that the numerous specific findings of the State Court that the Debtor's conduct was fraudulent or otherwise reprehensible support its position that the Debtor's indebtedness to it is nondischargeable under §§ 523(a)(4) and/or (a)(6). The Debtor, meanwhile, attempts to extract a collateral estoppel in his favor from what the State Court did *not* rule.

Setting out the basis for a finding of collateral estoppel, we begin with citation to *Grogan v. Garner*, 498 U.S. 279, 284–85 n. 11, 111 S.Ct. 654, 112 L.Ed.2d

755, (1991), where the Court clearly stated that "collateral estoppel principles do indeed apply in discharge exception proceedings pursuant to 11 U.S.C. § 523(a)." We also note that

"[28 U.S.C. § 1738] directs a federal court to refer to the preclusion law of the state in which the judgement was rendered." *Marrese v. American Academy of Orthopaedic Surgeons,* 470 U.S. 373, 380, 105 S.Ct. 1327, 1331, 84 L.Ed.2d 274 (1985); *See also Migra v. Warren City School Dist. Board of Ed.,* 465 U.S. 75, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984); *Kremer v. Chemical Construction Corp.,* 456 U.S. 461, 102 S.Ct. 1883, 72 L.Ed.2d 262 (1982). "It has long been established that § 1738 does not allow federal courts to employ their own rules of res judicata in determining the effects of state judgements. Rather, it goes beyond the common law and commands a federal court to accept the rules chosen by the state from which the judgement was taken." *Marrese v. American Academy of Orthopaedic Surgeons,* 470 U.S. 373, 380, 105 S.Ct. 1327, 1332, 84 L.Ed.2d 274 citing *Kremer v. Chemical Construction Corp.,* 456 U.S. 461, 481–482, 102 S.Ct. 1883, 1897–98, 72 L.Ed.2d 262 (1982). . . .

*In re Asbury,* 195 B.R. 412, 415 (Bankr. E.D.Mo.1996). *Cf. Kridlow, supra,* 233 B.R. at 342, quoting *Bailey v. Ness,* 733 F.2d 279, 281 (3d Cir.1984) ("in cases where a party seeks to rely on a state court judgment to preclude relitigation of the same issues in federal court, a federal court must look to state law and its assessment of the collateral estoppel doctrine to determine the extent to which the state would have given its own judgment collateral estoppel effect.").

■ In Missouri,

[t]he doctrine of collateral estoppel precludes relitigation of issues determined by a former judgment. In reviewing whether the application of collateral estoppel is appropriate, [courts] should consider (1) whether the issue decided in

the prior adjudication is identical to the issue presented in the present action, (2) whether the prior adjudication resulted in a judgment on the merits, and (3) whether the party against whom collateral estoppel is asserted was a party or privity in the prior adjudication.

*In re Marriage of Kohler,* 778 S.W.2d 19, 20 (Mo.Ct.App.1989), citing *Consumers Oil Co. v. Spiking,* 717 S.W.2d 245, 249 (Mo. Ct.App.1986). Applying the aforesaid relevant Missouri law to the case before us, we first examine whether the issues previously litigated are identical to the issues relevant to the instant complaint for nondischargeability.

■ In State Court the parties disputed issues of breach of contract and fraud, both of which were determined to have occurred. The Plaintiff before us presents questions of whether Debtor committed a willful and malicious injury, as defined by 11 U.S.C. § 523(a)(6); and whether there was fraud, embezzlement or larceny on the part of the Debtor, as defined by 11 U.S.C. § 523(a)(4). Taking each of these in turn, we first note that the contention that there was a finding of "willful and malicious injury" is rendered problematic because the State Court used such terms only in the context of its award of punitive damages, which it granted in no more than a nominal ($1.00) amount. It does not appear that it discussed this issue as an element of either breach of the employment contract or fraud. The state court's determination of "fraud" was made in the course of its discussion of tort liability rather than in the context of the Bankruptcy Code. A finding of tortious fraud does not equate with fraud committed while acting in a fiduciary capacity, as is referenced in § 523(a)(4).

■ However, in reviewing the record, we find numerous references to factual findings which could support the conclusion that the Plaintiff engaged in embezzlement, despite the confinement of the claims in the underlying Judgment to

counts for breach of contract and fraud. The Court explained in *Brown v. Felsen*, 442 U.S. 127, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979), that collateral estoppel may bar relitigation of any issues previously tried before a state court in a nondischargeability complaint as long as that state court resolved factual issues using standards identical to those of the bankruptcy court's exceptions to discharge under § 523. *See also In re Braen*, 900 F.2d 621, 626–28 (3d Cir.1990). Looking to the Judgment, at ¶ 74, we note that the State Court specifically found that the Debtor "took and kept approximately 2600 duplicate lab book pages and other documents containing [the Plaintiff's] trade secrets and confidential information." The State Court further concluded that "[the Debtor's] action constituted theft of [the Plaintiff's] property." *Id.* at ¶ 63. Finally, it found that the Debtor fraudulently misrepresented himself in securing his employment with the Plaintiff, through which he was able to lawfully acquire the lab books and trade secrets which he later misappropriated. *Id.* at ¶ 111.

Thus, the State Court articulated conclusions of law which provided us with a clear basis on which to determine whether they comported with the standards for embezzlement under which we may find an exception to discharge pursuant to § 523(a)(4). To support such a finding, we must examine the "fraudulent appropriation of property to whom such property has been entrusted, or into whose hands it has lawfully come," *In re Spector*, 133 B.R. 733, 739 (Bankr.E.D.Pa.1991), applying a preponderance of the evidence standard. *See Grogan, supra*, 498 U.S. at 291, 111 S.Ct. 654 (holding that the standard of proof for the dischargeability exceptions in 11 U.S.C. § 523(a) is the preponderance of the evidence standard). Quoting only one of many similar passages from the Judgment, it appears self-evident that the findings surpassed the ordinary preponderance of the evidence standard: "There is no question that the evidence establishes [the Debtor's] possession of documents containing [the Plaintiff's] trade secrets and confidential business information." Judgment, at ¶ 114 n. 34.

The remaining questions in support of applying collateral estoppel require only brief mention. The State Court action did in fact conclude with a judgment on the merits. We further notice that the parties to the State Court action are the same as those presently before us. As the plaintiff in that action, the Plaintiff had the burden of establishing embezzlement by a preponderance of the evidence, and thus has the burden of establishing that the findings there comported with the definition in the Code as set forth in 11 U.S.C. 523(a)(4) defining certain actions as nondischargeable actions. Here, it appears the State Court did indeed determine factual issues using standards identical to those of the Code, and therefore we must apply the doctrine of collateral estoppel on the embezzlement issue.

We now proceed to apply the specific sections of the Code invoked by the Plaintiff in the Proceeding to the factual findings in the Judgment and other orders of the State Court.

2. *The Plaintiff Failed to Establish a Claim of "Willful and Malicious Injury" Pursuant to § 523(a)(6), as Defined by the Court in Kawaauhau v. Geiger.*

■ During the course of his relationship with the Plaintiff, the Debtor engaged in conduct which the State Court characterized variously as "intentionally misrepresent[ing] his state of mind", Judgment, at ¶ 9; "reprehensible and with malice," *id.* at ¶ 36; having "lied in order to mislead KV," *id.* at ¶ 34; and generally behaving toward the Plaintiff in a manner which was "reprehensible and with malice." *Id.* at ¶ 37. Ultimately, however, the State Court concluded that the Debtor "improperly took the duplicate lab book pages and

other documents to advance his rival business interest." *Id.* at ¶ 81.

The Plaintiff, focusing on the words of § 523(a)(6) rather than on their meaning as interpreted and applied by the State Court, appears to argue that we should equate the descriptive language of the State Court's findings with that required in a cause of action under § 523(a)(6). However, when reviewing the interpretation of § 523(a)(6) initially enunciated by this court, and now endorsed by the Supreme Court, we are not prepared to do so.

■ In *In re Gaebler*, 83 B.R. 264, 267 (Bankr.E.D.Pa.1988), *rev'd*, 88 B.R. 62 (E.D.Pa.1988), we "interpreted § 523(a)(6) to require an intent to cause injury, thus reading this exception to discharge narrowly." Although the district court in *Gaebler*, 88 B.R. at 65, and other courts, *e.g.*, *In re Horldt*, 86 B.R. 823, 824–28 (Bankr.E.D.Pa.1988), disagreed with our reasoning in *Gaebler*, the Court, in *Kawaauhau v. Geiger, supra,* 523 U.S. at ——, 118 S.Ct. at 977, appears to have ultimately settled this question in favor of our views in *Gaebler.* Finding that the negligent acts of the debtor-physician in the case before it could not be equated with an intent to injure that plaintiff, the Court thusly concluded that § 523(a)(6) only applies to acts done with the *actual intent* to cause injury:

> The word "willful" in (a)(6) modifies the word "injury," indicating that nondischargeability takes a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury. Had Congress meant to exempt debts resulting from unintentionally inflicted injuries, it might have described instead "willful acts that cause injury." Or, Congress might have selected an additional word or words, i.e., "reckless" or "negligent," to modify "injury."

*Id.* The Court then went on, as follows, to point out that

[a] more encompassing interpretation could place within the excepted category a wide range of situations in which an act is intentional, but injury is unintended, i.e., neither desired nor in fact anticipated by the debtor. Every traffic accident stemming from an initial intentional act—for example, intentionally rotating the wheel of an automobile to make a left-hand turn without first checking oncoming traffic—could fit the description. *See* 113 F.3d, at 852. *A "knowing breach of contract" could also qualify. See id.* [emphasis supplied.] A construction so broad would be incompatible with the "well-known" guide that exceptions to discharge "should be confined to those plainly expressed." *Gleason v. Thaw,* 236 U.S. 558, 562, 35 S.Ct. 287, 289, 59 L.Ed. 717 (1915). Furthermore, "we are hesitant to adopt an interpretation of a congressional enactment which renders superfluous another portion of that same law." *Mackey v. Lanier Collection Agency & Service, Inc.,* 486 U.S. 825, 837, 108 S.Ct. 2182, 2189, 100 L.Ed.2d 836 (1988). Reading § 523(a)(6) as the [debtors] urge would obviate the need for § 523(a)(9), which specifically exempts debts "for death or personal injury caused by the debtor's operation of a motor vehicle if such operation was unlawful because the debtor was intoxicated from using alcohol, a drug, or another substance." 11 U.S.C. § 523(a)(9); *see also* 11 U.S.C. § 523(a)(12) (exempting debts for "malicious or reckless failure" to fulfill certain commitments owed to a federal depository institutions regulatory agency). *Id.*

The Plaintiff argues that its claims are nondischargeable under § 523(a)(6) because the Debtor was found to have deliberately and willfully breached his employment contract and covenant not to compete, citing *In re Hallahan,* 936 F.2d 1496, 1501 (7th Cir.1991); *In re Springer,* 85 B.R. 634, 635 (Bankr.S.D.Fla.1988);

and *In re Callaway*, 41 B.R. 341, 344 (Bankr.E.D.Pa.1984). The Plaintiff correctly observes that these cases hold that a § 523(a)(6) claim could be made out solely on the basis of the State Court's finding that the Debtor committed a "wrongful act intentionally done without just cause or excuse." These cases and this argument, however, lack the benefit of the Court's holding in *Kawaauhau v. Geiger* and thus do not apply its reasoning. Pursuant to § 523(a)(6) as interpreted by the Court in that decision, they erroneously focus on whether the debtor committed an intentional act which resulted in injury, not, as is required, whether the debtor intentionally set out to injure the plaintiff by the acts committed.

We believe that sustaining the Plaintiff's § 523(a)(6) cause of action on the basis of its claim for breaches of contract would result in precisely the result which the Court, in *Kawaauhau v. Geiger*, stated would attend an erroneous, broad interpretation of § 523(a)(6). Here, the Debtor clearly acted intentionally, and his actions clearly resulted in injury to the Plaintiff. However, by the very terms of State Court's findings, the Debtor's intent was focused entirely on maximizing his personal financial interests, not intentionally harming the Plaintiff. The injury which resulted flowed from the Debtor's breaches of his contract, but there is no finding that it actually was a goal of the scheme he pursued, as opposed to the goal of benefitting himself. We must therefore hold that the instant record is insufficient to support the Plaintiff's claims under § 523(a)(6).

3. *The Plaintiff Has Nevertheless Established That Debts Incurred by the Debtor Constituted Embezzlement of Property Entrusted to His Care by the Plaintiff, Which Are Nondischargeable Pursuant to § 523(a)(4).*

At the outset, we note the Plaintiff's curious choices of the statutory bases on which it pursued its claims, against the Debtor, selecting §§ 523(a)(4) and 523(a)(6), when § 523(a)(2)(A) seems to more clearly apply. Section 523(a)(2)(A) provides as follows:

(a) A discharge under section 727, ... of this title does not discharge an individual debtor from any debt—

. . . . .

(2) for money, property, services or an extension, renewal, or refinancing of credit, to the extent obtained by—

(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition; . . . .

The underlying State Court's Judgment and orders, which resonate with findings of specific frauds on the part of the Debtor, would appear to clearly support an exception to discharge under these requirements. However, the Plaintiff's Complaint and its post-trial briefs fail to cite this Code section, and it appears too late for an amendment to add such a claim. *See In re Staffieri*, 1994 WL 463978, at *4 (Bankr. E.D.Pa. Aug. 23, 1994), *aff'd sub. nom. Obermayer, Rebmann, Maxwell & Hippel v. Staffieri*, 1995 WL 339019 (E.D.Pa. June 5, 1995) (offer to amend complaint after court announces its decision is not timely). Instead, the Plaintiff requires us to focus upon § 523(a)(6), which we have already determined will not support a declaration of nondischargeability, and § 523(a)(4), the claims pursuant to which we now must address.

 Section 523(a)(4) of the Bankruptcy Code excepts from discharge any debt resulting from "fraud or defalcation while acting in a fiduciary capacity, embezzlement or larceny." In order for us to determine that any portion of the Debtor's obligation to the Plaintiff may be deemed nondischargeable pursuant to the "fraud or defalcation" prong of 11 U.S.C. § 523(a)(4), the Plaintiff was obliged to prove that the Debtor was acting in a fiduciary capacity and committed fraud or defalcation while in that capacity. *See e.g.,*

*In re Brady*, 234 B.R. 652, 659–60 (Bankr. E.D.Pa.1999); *In re Desiderio*, 213 B.R. 99, 102–05 (Bankr.E.D.Pa.1997); *In re Kaplan*, 162 B.R. 684, 704 (Bankr.E.D.Pa. 1993), *aff'd sub nom. Kaplan v. First Options of Chicago, Inc.*, 189 B.R. 882 (E.D.Pa.1995), *reconsideration denied*, 198 B.R. 91 (E.D.Pa.1996); and *Spector, supra*, 133 B.R. at 739. In addition, the plaintiff was obliged to demonstrate the existence of an express trust relationship between the debtor and the creditor. *See, e.g., Brady, supra*, at 659; *Desiderio, supra*, 213 B.R. at 102–03; *Kaplan, supra*, 162 B.R. at 704; and *Spector, supra*, 133 B.R. at 739.

The prerequisites for the creation of an express trust relationship under Pennsylvania law are demanding, and include "(1) an express intent to create a trust, (2) an ascertainable res, (3) a sufficiently certain beneficiary, and (4) a trustee who 'owns' and administers the res for the benefit of another (the beneficiary)." *Brady, supra*, at 659–60; *Desiderio, supra*, 213 B.R. at 103; and *Kaplan, supra*, 162 B.R. at 705.

The relationship between the parties in the Proceeding falls short of constituting the requisite fiduciary relationship to support an exception to discharge under the first prong of § 523(a)(4). The parties stood in an employment relationship and, despite the sensitive information made available to the Debtor, a trusted employee does not rise to the level of a fiduciary of his employer. The Plaintiff's efforts to assert an exception to discharge for fraud based on the first prong of § 523(a)(4) thus reflects a misapplication of such a claim.

Although the Plaintiff devoted little attention to arguments under the embezzlement or larceny prongs of § 523(a)(4), it does make such claims and we therefore may properly assess claims under these remaining two prongs of § 523(a)(4). Similar in nature, both embezzlement and larceny address the misappropriation of property. In *Spector, su-pra*, 133 B.R. at 741, we defined the terms for purposes of § 523(a)(4) as follows:

[Embezzlement is] the fraudulent appropriation of property by a person to whom such property has been entrusted, or into whose hands it has lawfully come. It differs from larceny in the fact that the original taking of the property was lawful or with (the) consent of the owner, while in larceny the felonious intent must have existed at the time of the taking. 3 Collier on Bankruptcy, ¶ 523.14[3], at 523–113. *See also In re Crosswhite*, 91 B.R. 156, 159 (Bankr. M.D.Fla.1988); *In re Ramonat*, 82 B.R. 714, 720; and *In re Salamone*, 78 B.R. 74, 77 (Bankr.E.D.Pa.1987).

Embezzlement is similarly defined in, *e.g., In re Funventures in Travel, Inc. v. Dunn*, 39 B.R. 249, 251 (E.D.Pa.1984); and *In re Britt*, 200 B.R. 409, 411 (Bankr. M.D.Fla.1996).

The Plaintiff correctly points out that the State Court found that the Debtor fraudulently misrepresented his position and compliance with the employment contract, thereby securing employment through which he acquired the Plaintiff's trade secrets and lab books. The State Court clearly found that these materials were the property of the Plaintiff, entrusted by it to the Debtor in his capacity as its employee. There is no dispute, then, that these materials came lawfully into the Debtor's possession in that capacity and we may therefore dispense with any further consideration of larceny as reason to except the judgment from discharge. *Compare Salamone, supra*, 78 B.R. at 77.

In order to establish a claim of embezzlement, the Debtor must also be shown to have misappropriated the Plaintiff's property. The findings of the State Court are that he clearly did so. When the Debtor left the Plaintiff's employer to join Scherer, the Debtor took with him both his knowledge of the Plaintiff's trade secrets and its lab books in which his notes had been recorded. The Judgment points specifically to the requirement that all proper-

ty of the Plaintiff was to be returned to it as of the moment of termination of employment and departure, thus finding that the Debtor's failure to comply constituted a misappropriation or theft of the Plaintiff's property.

In *Salamone, supra,* 78 B.R. at 77, the court notes that "a requirement that the creditor prove the damages resulting from the embezzlement is implicit in the embezzlement exception to discharge." In cases of intangible property, the assessment of damages can be difficult. Here, we consider a combination of intangible property in the form of trade secrets, and tangible property in the form of the lab books in which those secrets were recorded. We must turn for guidance to the damages as awarded by the State Court to determine the extent to which damages were awarded for the Debtor's acts of embezzlement.

 The State Court determined that the Debtor's actions in embezzling the Plaintiff's property rose to a level justifying punitive damages. Despite this, the State Court concluded that it was limited as a matter of law to imposing *de minimis* damages of $1.00 because the Plaintiff had failed to submit or provide any evidence of the Debtor's net worth. Judgment, at ¶ 118. Similarly, while the Debtor benefitted as a result of his fraudulent misrepresentations to the Plaintiff, the State Court limited its award of actual damages to a *de minimis* award of $1.00 in the absence of proof of the Debtor's net worth. The imposition of both actual damages and punitive damages, however, implies that the Plaintiff was truly damaged by the Debtor's actions, and we are inclined to accept the awards, small as they are monetarily, as sufficient to sustain a finding that the Debtor indeed embezzled the property of the Plaintiff in the sense referenced by § 523(a)(4). The small damage awards resulted from absence of proof of the Debtor's net worth, not from the lack of substance of such claims. We therefore hold that all aspects of the Judgment stemming from the Debtor's embezzlement of the

Plaintiff's property are nondischargeable pursuant to the embezzlement prong of § 523(a)(4) of the Bankruptcy Code.

*4. The Amounts Deemed Nondischargeable Include All Components of the Damages Awarded by the State Court.*

The amount claimed by the Plaintiff in the instant Proceeding represents an aggregate of numerous awards entered by the State Court. The damage awards are comprised of $1.00 compensatory damages for breach of contract, as well as $1.00 compensatory and $1.00 punitive damages for fraud. Also included is a fine of $250.00 imposed against the Debtor for his contempt of the State Court's interlocutory order requiring him to return the Plaintiff's property to it. The remainder and bulk of the amount represents attorneys' fees incurred by the Plaintiff in the litigation and enforcement of the employment contract and in pursuit of Motions for contempt and dismissal of the Debtor's Counterclaims.

 As we explained in *In re Clayton,* 195 B.R. 342, 346 (Bankr.E.D.Pa.1996),

[t]he role of a bankruptcy court in a dischargeability proceeding is merely to determine whether certain claims are dischargeable or not, not to liquidate those claims. *See In re Stelweck,* 86 B.R. 833, 844–45 (Bankr.E.D.Pa.1988), *aff'd sub nom. United States v. Stelweck,* 108 B.R. 488 (E.D.Pa.1989). The task of liquidation falls to nonbankruptcy courts.... *In re Cohen,* 1995 WL 346948, at *3 (Bankr.E.D.Pa.1995).

*Accord, e.g., Brady, supra,* at *9, and cases cited therein.

 In this instance, the State Court has already liquidated the Plaintiff's claims in a judgment totaling $132,247.76. Recognizing that ancillary obligations partake of the character of the underlying debt, *see In re Florida,* 164 B.R. 636, 639 (9th Cir. BAP 1994) (excepting from discharge those debts "directly consequent to

the setting of damages by the courts in the form of final judgments, and the costs of securing performance thereof"), and that all aspects included in liquidation of nondischargeable claims are nondischargeable, see *Clayton, supra*, 195 B.R. at 346, we will endeavor to clarify amounts which remain nondischargeable here.

Certain funds have been paid by the Debtor to the Plaintiff in partial satisfaction of the total judgment, resulting in a net amount still due and owing to the Plaintiff. We are unable to verify from the parties' submissions exactly what amounts awarded remain outstanding. Such determinations are, like the liquidation of a nondischargeable obligation, left to the state courts. We will confine our discussion of "nondischargeable amounts" to the original amounts awarded in the State Court's Judgment and orders in the record.

 The State Court detailed the dollar amounts awarded to the Plaintiff in its Judgment of September 16, 1994, and its Order of October 18, 1994. The Judgment also specifically referenced the counts on which the court found for the Plaintiff, while the October order specified awards of attorneys' fees supported by the Court's rulings on the particular counts in the Plaintiff's favor. For purposes of examining the relationship of the attorneys' fees and fines to the underlying basis for nondischargeability under the § 523(a)(4) embezzlement prong, we will analyze the awards by each count.

The decision as to Court I was a declaratory judgment finding that the employment contract between the parties was valid and enforceable, but included no monetary award. Count II sought damages for breaches of the parties' contract, and the State Court found in favor of the Plaintiff on this claim, specifically stating that the breach occurred because of the Debtor's "[misappropriation] of Plaintiff's trade secrets and confidential business information." Judgment, at ¶ 56. As we previously stated, this finding forms the core of the conclusion that the Debtor was chargeable with embezzlement pursuant to § 523(a)(4). *See* pages 780–81 *supra*. Consequently, all amounts awarded ancillary to Count II must be deemed nondischargeable.

The awards associated with Count II constitute fees incurred in the pursuit of the litigation and enforcement of the employment contract. We note that, absent the embezzlement of the lab books or their prompt return, the Plaintiff would not have needed to pursue a Motion for Contempt and the state court would have had little reason to impose a fine. Because all of the aforementioned awards, totaling $117,445.57, arose directly from the underlying embezzlement on which this exception to discharge rests, we hold them to all be similarly nondischargeable.

Ironically, Count III, which seeks damages for fraud and is the only claim which Debtor conceded might be nondischargeable in this adversary complaint, represents a claim on which we found no exception to discharge proven. The compensatory and punitive damages awarded by the State Court for fraud, were they still outstanding as debts and not, as they were, satisfied, would therefore be discharged.

The remaining portion of the award, representing attorneys' fees awarded on the Plaintiff's Motion to Dismiss the Debtor's counterclaims and for Sanctions, would never have been incurred had the action to enforce the contract not been needed. Put another way, we observe that, had the Debtor not breached the contract, no litigation would have followed. While we are unable to determine from the stipulated record which aspects of the Motion to Dismiss were directly attributable to the underlying embezzlement, all of the Plaintiff's claims in the State Court lawsuit seem generally inseparable from claims of the Debtor's unlawful misappropriation of its property. We therefore hold that the remaining $14,790.29 award is also nondis-

chargeable pursuant to the embezzlement prong of § 523(a)(4).

Thus, all of the damages awarded by the State Court are determined to be the nondischargeable obligations of the Debtor to the Plaintiff.

## D. MISCELLANEOUS/CONCLUSION

■ Since the Plaintiff ultimately prevailed on its claims herein, the Proceeding clearly cannot be deemed frivolous. Therefore, the Debtor's Counterclaim to recover his attorneys' fees for defending the complaint, assuming such a claim had any statutory basis, must be denied. In any event, such a claim would be barred by the "American Rule" requiring parties to bear their own attorneys' fees in the absence of an explicit Congressional authorization to the contrary. *See, e.g., Key Tronic Corp. v. United States,* 511 U.S. 809, 814–15, 114 S.Ct. 1960, 128 L.Ed.2d 797 (1994). This principle also requires our denial of any claims of the plaintiff that it is entitled to attorneys' fees from the Debtor for its efforts in pursuing this Proceeding in this court in addition to those awarded by the State Court.

An order denying the Counterclaim, as well as sustaining the Plaintiff's claim that the Debtor's total obligation to it is declared nondischargeable, solely on the basis of the embezzlement prong of 11 U.S.C. § 523(a)(4), will be entered.

### ORDER

AND NOW, this 1st day of July, 1999, upon consideration of the Stipulation of Facts which the parties agreed would constitute the record in the above-captioned proceeding ("the Proceeding") and the submissions of the parties relevant thereto, it is hereby ORDERED AND DE-CREED as follows:

1. Judgment is entered in favor of KV PHARMACEUTICAL COMPANY ("the Plaintiff") and against RONALD HAR-LAND ("the Debtor") in substantial part. All claims of the Plaintiff against the Debt-

or are DECLARED nondischargeable pursuant to the embezzlement prong of 11 U.S.C. § 523(a)(4).

2. All other claims of the Plaintiff against the Debtor are DENIED.

3. Judgment is entered in favor of the Plaintiff and against the Debtor on the Debtor's Counterclaim. The said Counterclaim is accordingly DISMISSED.